## RUSSELL PETROLEUM CO. v. WALKER et al.

No. 24072. Opinion Filed Feb. 7, 1933.

Rehearing Denied March 7, 1933.

Sid White, for plaintiff in error.

Hayes, Richardson, Shartel, Gilliland & Jordan, and E. S. Ratliff, for defendants in error.

ANDREWS, J. The plaintiff in error commenced an action against the defendants in error in the district court of Oklahoma county. The trial court held that it was "* * * without power, jurisdiction or authority to enjoin the Corporation Commission or the defendants Paul Walker, Roy Hughes, and C. C. Childers, constituting said Commission, from trying the plaintiff upon any charge, * * *" and that it was "* * * without power, jurisdiction, or authority to enjoin the defendant Cicero I. Murray, his agents, and servants, and those acting under his direction as prayed in plaintiff's petition. * * *" From the judgment based thereon the plaintiff appealed to this court. Hereinafter the parties will be referred to as plaintiff and defendants.

The first question presented by the plaintiff is:

"Does the district court of Oklahoma county, Okla., sitting in equity, have jurisdiction to enjoin the Corporation Commission from closing an oil well for a violation of its orders or some one of them, in a proper case?"

The plaintiff says that the trial court renounced jurisdiction as to the orders of the Corporation Commission upon the theory that section 20, art. 9, of the Constitution forbade its exercise thereof. That section provides that:

"* * * No court of this state (except the Supreme Court, by way of appeals as herein authorized) shall have jurisdiction to review, reverse, correct, or annul any action of the Commission within the scope of its authority, or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the Commission in the performance of its official duties: Provided, however, that the writs of mandamus and prohibition shall lie from the Supreme Court to the Commission in all cases where such writs, respectively, would lie to any inferior court or officer."

That provision is applicable only to actions of the Corporation Commission which are within the scope of its authority. That provision and the provisions of section 2, art. 7, of the Constitution, when construed together, vest this court with exclusive jurisdiction to review, reverse, correct or annul any action within the scope of the authority of the Corporation Commission. By the provisions of section 10, art. 7, of the Constitution, district courts have jurisdiction in all cases, civil and criminal, except where exclusive jurisdiction was, by this Constitution, or is, by law, conferred on some other court. Since exclusive jurisdiction was conferred upon this court by the constitutional provisions, supra, the district court did not have jurisdiction to review the orders of the Corporation Commission which were within the scope of its authority.

This court in Russell v. Walker, 160 Okla. 145, 15 P. (2d) 114, held that the Corporation Commission had jurisdiction, under the provisions of sections 11565 to 11574, inclusive, O. S. 1931 (sections 7954 to 7963, inclusive, C. O. S. 1921), to impose and enforce reasonable regulations for the production of oil from a common source of supply. That decision was based on the decision of this court in C. C. Julian Oil & Royalties Co. v. Capshaw, 145 Okla. 237, 292 P. 841, and the decision of the Supreme Court of the United States in Champlin Refining Co. v. Corporation Commission, 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062,

in each of which decisions the legislative act, supra, was held neither to be repugnant to the provisions of the federal nor the state Constitution.

In the trial court the plaintiff contended that the Corporation Commission was assuming and claiming the right to order the wells of the plaintiff closed for violation of certain orders theretofore made by the Corporation Commission. The plaintiff contended then and contends now that the orders said to have been violated were void for the reason that they operated as a discrimination against the plaintiff. Those orders were legislative in character and were made under the authority granted to the Corporation Commission by the Constitution and the authority delegated to the Corporation Commission by the Legislature. They were not orders judicial in their character.

The making of the legislative orders, supra, was within the scope of the authority of the Corporation Commission. This court will assume that the Corporation Commission will act within the scope of its authority when it proceeds, if it ever does, to make an order judicial in character with reference to the property of the plaintiff. From that order an appeal may be taken to this court or this court may exercise its general superintending control over the Corporation Commission and issue a writ of prohibition. If either procedure is followed, this court will review any judicial order so made, and, at the same time, it will review the legislative orders upon which the judicial orders are based. Thereby the plaintiff is afforded an adequate remedy.

We have not overlooked the decision of this court in Pioneer Telephone & Telegraph Co. v. State, 40 Okla. 417, 138 P. 1033, cited by the plaintiff.

The district court did not err in denying the application for injunction against the Corporation Commission, and its judgment thereon is in all things affirmed.

The second question presented by the plaintiff is:

"Did the district court err in holding that, because of the orders of the Governor hereinbefore set forth, it had no jurisdiction or authority to control the defendant in error Cicero I. Murray and those who acted with him and under his command and direction?"

It appears from the record that, while

the Corporation Commission had made an order fixing the allowable flow of all wells in the Oklahoma City oil field and other orders legislative in their character for the prevention of waste, no charge of overproduction by the plaintiff had been filed with the Corporation Commission; that the Corporation Commission had made no order directing the search, breaking or entering into, or the seizure of any of the property owned or operated by the plaintiff, and that Cicero I. Murray was not an agent of the Corporation Commission.

In a brief the defendants state:

"As soon as possible, after this case was determined, proceedings were filed before the Commission for a determination of the amount of Russell Petroleum Company's overproduction, and the period of time that should elapse before it was legally entitled to produce again, and that would have been determined long since but for the Russell Company's application to this court for a writ of prohibition against the Commission prohibiting it from hearing and determining the matter, which is still pending. The intent has been to follow the due and orderly process of law, and to release the wells when the proper time found by the Commission under its proration orders had expired."

Thereby, in effect, they say that they took charge of the property of this plaintiff, closed its wells, and thereafter proceeded before the Corporation Commission for a determination of the amount of overproduction by the plaintiff. If they had proceeded before the Corporation Commission prior to taking charge of the plaintiff's property, and if, prior thereto, the Corporation Commission had found and determined that the plaintiff had overproduced its wells, and if, prior thereto, the Corporation Commission had ordered those wells to be closed, a materially different case would have been presented. While they say that their intention was to follow the due and orderly processes of law, their statement of facts is to the contrary. The executive orders, which they offer as a defense for their actions, show upon their face that they apply to every oil well in the Oklahoma City field without regard to whether or not the owners or operators thereof have violated any provision of the statute. The orders show an intention to take charge of the Oklahoma City oil field for the purpose of preventing any violation of the statute by any person operating any well in that field. Had the defendants intended to follow the due and orderly processes of law, as they contended in their briefs, they would have waited until the Corporation Commission had made a finding of fact and an order based on that finding which authorized the closing of the wells of this plaintiff. While they say in their brief that this is a mere case to prevent a party from defiantly, persistently, and constantly violating the law, they nowhere contend, and on oral argument they admit, that there has been no determination by the Corporation Commission or by any court that the plaintiff has violated any law.

In the trial court the plaintiff contended that Cicero I. Murray and the state militia under his charge had seized the wells of the plaintiff and were holding the same and the property of the plaintiff on which the wells were situated, without any authority of law.

The contention that those acts were without authority of law was based on the contention that the Corporation Commission had made no order finding or determining that the plaintiff had violated the provisions of any statute or any order made thereunder; that there were no valid orders of the Corporation Commission to be enforced; that the defendant Cicero I. Murray was not an officer, agent, or representative of the Corporation Commission, and that he was not properly charged with the duty of enforcing any order promulgated by the Corporation Commission.

As a defense thereto it was contended that Cicero I. Murray and the militia under his charge were acting under authority of two orders made by the Chief Executive of the state of Oklahoma. The first of those orders was as follows:

"State of Oklahoma
"Executive Department.
"Executive and Military Order.

"Whereas, the decision of the Supreme Court of the United States in the Champlin Case, recently decided, declared the penal clause of the law for violation of the proration law not drawn with such specific care as to render the same valid, and further held that the provision authorizing receivership for wells violating the law was invalid; and,

"Whereas, the Corporation Commission has no authority to enforce its orders other than to fine as for contempt, and grave doubt exists that it has this authority, but, if so, this, in effect, is but to license the violation of the law; and,

"Whereas, great quantities of oil has

been and is now being taken out of the field by certain companies, in violation of the proration orders of the Commission; and,

"Whereas, an honest, rigid enforcement of the law is essential for its prevention, and particularly for maintaining a reasonable and stable price for crude oil and its by-products, and for the collection of revenues due the state and those inuring to the school fund on the school lands leased for oil; and,

"Whereas, it is incumbent upon the Governor, under article 6 of the Constitution, to see that the laws are upheld, and, for such purpose, he is made Commander-in-Chief of the military forces, with a further grant of supreme executive power under the limitations of American institutions and constitutional instruments: It, therefore, becomes essential for the Governor of the state of Oklahoma to exercise such executive powers as chief magistrate, and to invoke military rule and the military arm of the state, for the purposes aforesaid:

"Now, therefore, I, Wm. H. Murray, the Governor of the state of Oklahoma, do hereby and hereon declare that the military zone around the several oil wells contained in my order of August 4, 1931, be continued, not only for the purpose of watching the enforcement of orders of proration but for the purpose of actually prorating the oil output in the Oklahoma City field, and to control the transport of such oil through the pipe lines and its storage tanks; and for said last purpose there is hereby also declared a military zone around each and every storage tank to a distance of twenty-five (25) feet on each side thereof, the said military zones to include in addition the selection by the Governor of proration officers and all persons having to do with the enforcement of such orders; to fix their compensations, time and hours of employment; to provide for the expense for compensating them other than from state funds.

"Second: For the purpose of effectuating the foregoing, the production of oil, and the limiting of such production to the allowable, equitable prorated, there shall be selected one umpire and such clerks, as may be necessary, together with thirty (30) militia; such militia shall be stationed on said oil fields and zones in three shifts of eight (8) hours each, as follows: From eight o'clock a. m., until 4:00 o'clock p. m. each day, four (4) of said militia shall be on watch; and between 4:00 p. m. and 12:00 o'clock midnight, ten (10) of such militia shall be on guard; and, between midnight and 8:00 o'clock in the morning sixteen (16) of said militia shall be on guard,— all under the immediate direction of Lieutenant Colonel Cicero I. Murray, and subject to his immediate order, and, ultimately, under the direction of the Adjutant General

or the Governor, as Commander-in-Chief. The compensation of said thirty (30) militia shall be three ($3) dollars for such eight hours' service each day for persons without automobiles; and, for persons requiring automobiles, the compensation shall be fixed by Lieutenant Colonel Cicero I. Murray.

"For the purpose of investigating orders, for equitable proration, and to recommend to the Governor (the commander-in-chief), the allowable for each of said wells in said field, there is hereby created a proration board, to consist of the five following persons:

"Lieutenant Colonel Cicero I. Murray;

"The Proration Umpire;

"One member to be selected by and from producers who have neither pipe lines nor refineries;

"One member to be selected by and from producers who have refineries; and,

"One member to be selected from and by the owners of pipe lines.

"The said proration board shall make findings from time to time, and recommend allowables for the field, which shall be the market demand, upon approval thereof by the Governor; provided that the orders of the Corporation Commission heretofore made for the month of June shall continue in force until the first of July, and thereafter, until other orders are made and approved, as aforesaid.

"Third: The umpire is hereby directed and required to excavate around any and all wells where it is believed or alleged there are secret pipes used for the purpose of filching more than their allowable, to prevent such illegal taking as may be discovered.

"Fourth: Each and every pipe line owner, manager, or operator of pipe line, transporting oil out of the field, and to all refineries surrounding the field, to loading racks and storage tanks, for the purpose of storage, other than storage on the lease, is hereby required to equip immediately, but/and not later than August 1st, with meters sufficient to determine as accurately as possible the amount and flow of oil through said pipes, and said pipe line owners, managers, or operators are hereby required to furnish the umpire with the amount of oil coming from each and every well or producer in the field daily, in order that proration may be carried out in truth; and in fact, and the law, in all things, upheld.

"Fifth: It is hereby ordered that the entire expense for the umpire and all clerks, assistants, auditors, bookkeepers, and others under his charge, together with the compensation for the militia, aforesaid, shall be

assessed proportionately against the producers in the field, subject to the proration orders, not as a tax but as an expense for such police and military regulation of the field, wells, pipe lines, storage tanks, and other means of producing, refining, and transporting, and each and all of said producers are hereby assessed one-fourth (¼) of one cent per barrel of all oil produced for the payment of expenses herein incurred, provided that in the event said one-fourth (¼) of one cent a barrel shall have accumulated at the end of any ninety-day period, beginning with July 1st, an amount in excess of that required; then, in that event, collection for such purposes shall cease for a time or period, to consume the excess so collected; and, when thus consumed, the umpire shall at once begin to re-assess and collect said one-fourth (¼) of one cent a barrel on each and every barrel produced, as before stated; and, as a penalty for non-payment, Lieutenant Colonel Cicero I. Murray is hereby authorized and directed by general order to close down the well or wells or any company or producer that does not by the 10th of each and every month make payment of said one-fourth (¼) of one cent, as aforesaid, until payment in full is made.

"Sixth: The umpire, auditors, clerks and other assistants, together with the thirty (30) guards aforesaid, are hereby covered in and made a part of the militia of the state of Oklahoma.

"Seventh: It is further ordered that the proration board before authorized, established, and created, shall have the power and authority, and are hereby directed to make and promulgate necessary rules and regulations for the purpose of the enforcement of the laws of the state with reference to the proration matters, and to effectuate completely all of the foregoing herein recited, which rules and regulations shall be subject to the approval of the Governor.

"Eighth: All authority or powers or functions of the present umpire and proration officials now in control of the field are hereby suspended.

"Done at the Same Capitol, in Oklahoma City, Oklahoma, on this, the 21st day of June, A. D., 1932.

"By the Governor of the State of Oklahoma:

"Wm. H. Murray.
"Wm. H. Murray,
"Commander-in-Chief of the Militia.
" (Seal)
"Countersigned:
"Chas. F. Barrett,
"Adjutant General.
"Attest: R. A. Sneed,
"Secretary of State.
"By: Una Lee Roberts,
"Assistant Secretary of State."

The second of those orders was, as follows:

"State of Oklahoma.
"Executive Department.

"Supplemental Executive and Military Order.

("July 7, 1932, explains order of June 21, 1932.)

"Whereas, It has been made to appear that the 'Executive and Military Order' issued by the Chief Executive of the state of Oklahoma on June 21, 1932, relative to conditions existing in the Oklahoma City oil field, and the production, storage, transportation, and marketing of crude oil or petroleum in said field, is not entirely clear in some respects, the said order having been prepared hastily; and,

"Whereas, It is the desire of the Chief Executive that the said order may be so clear that there can be no misunderstanding with reference thereto;

"Now, Therefore, It is declared by the Chief Executive that it was and is the purpose and intention of the said order to furnish the force and means necessary to enforce and carry out the orders of the Corporation Commission, made and promulgated for the purpose of regulating the production, transportation, and marketing of crude oil in the Oklahoma City oil field, the Corporation Commission being powerless to enforce its own orders, and that it was not the purpose or intention of the said Executive and Military Order of June 21, 1932, to suspend, supersede, or in any manner interfere with the Corporation Commission in the exercise of its statutory powers and duties, except to suspend the power and authority of the agents of the Corporation Commission to enforce the orders, rules and regulations of said Commission in the Oklahoma City oil field.

"And it is hereby further declared that it was not the purpose or intention of the said order that the proration board referred to in said order should in any manner usurp any of the powers or functions of the Corporation Commission, but merely that said proration board should act in an advisory capacity for the purpose of counseling and advising the Corporation [Commission] in the performance of its duties, for the purpose of counseling and advising Lieutenant Colonel Cicero I. Murray in the enforcement of the orders of the Corporation Commission, and for the purpose of keeping the Chief Executive fully advised with reference to conditions existing in the Oklahoma City oil field, and as to how the said Executive and Military Order of June 21, 1932, is being performed and carried out.

"Now, Therefore, I, Wm. H. Murray, the Governor of the State of Oklahoma, do here-

by order and direct that the said Executive and Military Order of June 21, 1932, be interpreted as herein set forth and explained.

"And I do hereby further order and direct that the said order, as herein and hereby explained and interpreted, shall, in all things, be and remain in full force and effect, and that it be diligently executed and enforced according to its terms and provisions as herein and hereby explained and interpreted.

"By the Governor of the State of Oklahoma:

"Wm. H. Murray,
"Commander-in-Chief of the Militia.

"Attest: R. A. Sneed,
"Secretary of State.

"Countersigned: Chas. F. Barrett,
"Adjt. General."

It is contended that the trial court was without jurisdiction to inquire into the authority of the militia and to enjoin the defendants, Cicero I. Murray, his agents and servants and those acting under his direction, from interfering with the property of the plaintiff. That contention is based on a provision of section 8, article 6, of the Constitution, which requires the Governor to cause the laws of the state to be faithfully executed, and a provision of section 6 of that article which authorizes the Governor to call out the militia to execute those laws. Those constitutional provisions apply to all of the laws. Section 7, article 2, of the Constitution is one of those laws. That section provides that no person shall be deprived of his property without due process of law. That provision may not be violated in an effort to enforce some legislative enactment. Reliance may not be had upon a provision of the Constitution authorizing the calling out of the militia of the state to execute the laws as a defense to actions of the militia which violate the constitutional provision that no person shall be deprived of his property without due process of law.

Under the provisions of article 6 and section 1, article 4, of the Constitution, no order, proclamation, or decree of the Governor of the state, as the Chief Executive thereof, has the force of law, the law-making power of the state being vested exclusively elsewhere.

"The military shall be held in strict subordination to the civil authorities. No soldier shall be quartered in any house, in time of peace, without the consent of the owner, nor in time of war, except in a manner to be prescribed by law." Section 14, article 2, of the Constitution.

In part, the two executive orders are legislative in character.

The first paragraph of the first executive order recites, as a reason for the order, which, in effect, established a military receivership of the Oklahoma City oil field, that the penalties included in the legislative enactment had been held to be invalid by the Supreme Court of the United States. That court, in Champlin Refining Co. v. Corporation Commission et al., supra, held section 9 of the legislative enactment to be invalid. That section provided that any person, firm, or corporation violating the provisions of the act should be subject to have his or its producing property placed in the hands of a receiver by a court of competent jurisdiction, the receivership to extend to the operation of producing wells and the marketing of the production thereof. By the executive orders provision was made for the establishment of a military receivership of the Oklahoma City oil field when no civil receivership thereof was authorized.

The second paragraph of the first executive order recites that the effect of the penalty provided by the Legislature was to license a violation of the law. That reason was stated for an attempt to establish by executive order a more efficient manner or system of handling the matter than had been authorized or provided by the laws enacted by the Legislature. Injunctive process of the courts of this state is available in aid of the execution of the laws of the state and to prevent a continued violation of the laws of the state, where property rights are involved and where there is no adequate remedy at law. That remedy was available. There was another remedy, that is, "to convoke the Legislature" for the purpose of providing adequate procedure and penalties for the enforcement of the law. Section 7, article 6, of the Constitution, which grants that authority, immediately precedes the section which requires the Governor to cause the laws of the state to be faithfully executed. No greater penalty or different manner of enforcement may be imposed than that provided by the legislative enactments, and a greater penalty or different manner of enforcement imposed by an executive order is ineffective.

It must be kept in mind that the legislative enactment in question is the only authority for the proration of oil. "The right to reduce oil or gas to possession is a valuable property right." Wright v. Carter Oil Co., 97 Okla. 46, 223 P. 835. Oil and

gas when reduced to possession are property. Before the enactment of the legislative enactment in question, every person had the right to drill wells on his own land and to take from the pool below all the oil that he might be able to reduce to possession, including that coming from land belonging to others. Champlin Refining Co. v. Corporation Commission, supra. The Legislature imposed what it considered to be reasonable regulations to prevent unnecessary loss, destruction, or waste of oil. It also imposed penalties. The invalidity or the inadequacy, if any, of the penalties imposed did not authorize the imposition or enforcement of penalties not provided by law.

One of the executive orders directed that an assessment be levied against the producers in the field to pay the expense of police and military regulation thereof, and that for want of payment thereof and as a penalty for a failure to pay the same, the wells of the producer failing to pay should be closed and kept closed until payment thereof was made. That order did not purport to be under any authority conferred by law on the Corporation Commission. The Corporation Commission has no such authority. The Legislature is required to provide for the maintaining of the militia. Section 40, article 5, of the Constitution. There is no authority of the Chief Executive of this state to levy, or to direct that there be levied, an assessment on any person, firm, or corporation, either as a tax or as an expense for police and military regulation, or to close producing wells or direct that they be closed for failure or refusal of the operator thereof to pay such an assessment.

The fourth paragraph of the first executive order recites, as a basis for the order made, that a rigid enforcement of the law was required, "particularly for maintaining a reasonable and stable price for crude oil," and the collection of revenue due to the state. We note the statement of the Supreme Court of the United States in Champlin Refining Co. v. Corporation Commission, supra, that the Corporation Commission has never made an order under section 2 of the act and that no order has been made by it for the purpose of fixing prices. The executive order was an attempt on the part of the Chief Executive to do that which the Corporation Commission has not done.

While the third paragraph of the first executive order, in effect, recites that great quantities of oil had been and were being taken out of the field in violation of proration orders of the Corporation Commission it does not recite that this plaintiff had taken or was taking oil from the field in violation of proration orders of the Corporation Commission.

Neither the Corporation Commission nor any judicial tribunal established by law has found or determined that the plaintiff has violated any law, or has decreed that the property of the plaintiff should be taken from it and its wells closed. The executive orders of the Governor do not constitute due process of law within the meaning of our Constitution. We adopt the language of the Supreme Court of the United States in R. S. Sterling, Governor of the State of Texas, et al. v. E. Constantin et al., No. 11453, opinion filed December 12, 1932, 53 S. Ct. 190, as follows:

"The assertion that such action can be taken as conclusive proof of its own necessity and must be accepted as in itself due process of law has no support in the decisions of this court"

—as applicable herein.

A portion of one of the briefs of the defendants is devoted to a discussion of whether or not this court may control the actions of the Governor. The record discloses no effort to control the actions of the Governor. The question here is not whether or not the Governor of the state may call out the militia for the purpose of enforcing the laws of the state. The question here is whether or not the militia may be enjoined when, after it has been called out, it attempts to take, or is taking, private property from an owner thereof without due process of law. The defendants assert that the courts are without authority to enjoin the militia. In the language of Mr. Chief Justice Hughes, in R. S. Sterling, Governor, et al. v. E. Constantin et al., supra:

"If this extreme position could be deemed to be well taken, it is manifest that the fiat of a state Governor and not the Constitution of the United States would be the supreme law of the land * * *"

That statement is applicable to the Constitution of the state of Oklahoma. If this extreme position could be deemed to be well taken it is manifest that the fiat of the Chief Executive of Oklahoma and not the Constitution of the state of Oklahoma, would be the supreme law of Oklahoma. The Constitution, and not an order of the Chief Executive, is the supreme law of Oklahoma. The due process clause of the Constitution guarantees protection to the owner of prop-

erty against deprivation by the militia as much as it guarantees protection to him against deprivation by any other person.

The Chief Executive of the state does not relieve the courts of their duty to construe and apply the laws by placing a construction upon the laws and by calling out the militia to enforce that construction thereof. The duty of the Chief Executive to cause the laws to be faithfully executed vests him with the discretion to determine whether or not an exigency requiring military aid for that purpose has arisen. His decision of that question is conclusive upon the courts of this state, but, when the militia is called out for the purpose of enforcing the laws of the state, its actions, which operate to deprive owners of their property without due process of law, are subject to review by and to the control of those courts. As expressed by the Supreme Court of the United States in R. S. Sterling, Governor, et al. v. E. Constantin et al., supra, it does not follow

"* * * that every sort of action the Governor may take, no matter how unjustified by the exigency or subversive of private right and the jurisdiction of the courts, otherwise available, is conclusively supported by mere executive fiat. The contrary is well established. What are the allowable limits of military discretion, and whether or not they have been overstepped in a particular case, are judicial questions."

In that case that court said:

"Instead of affording them protection in the lawful exercise of their rights as determined by the courts, he sought, by his executive orders, to make that exercise impossible. In the place of judicial procedure, available in the courts which were open and functioning, he set up his executive commands which brooked neither delay nor appeal."

That statement is applicable to the conditions existing in Oklahoma. Instead of affording the owners of property protection in the lawful exercise of their rights as determined by the courts, the Chief Executive of the state, by his executive orders, has sought to make that exercise impossible. In the place of judicial procedure, available in the courts which were open and functioning, he set up his executive commands which brooked neither delay nor appeal. As was said by the Supreme Court of the United States in R. S. Sterling, Governor, et al. v. E. Constantin et al., supra, if it be assumed that the Chief Executive was entitled to bring military forces to the aid of civil authority, the proper use of that power was

to maintain the courts and not to attempt to override them, and to aid in making the process of those courts effective and not to nullify them.

It is said that the decision of the Supreme Court of the United States in R. S. Sterling, Governor, et al. v. E. Constantin et al., supra, is not controlling in this case for the reason that the facts in that case show that the Governor of Texas sought to limit oil production otherwise lawful and that the Chief Executive of this state seeks to limit oil production to the amount that may be lawfully produced. That contention is not supported by the record in this case. There is nothing in the record in this case to show that this plaintiff is attempting to unlawfully produce oil, or that it has unlawfully produced oil. The question as to whether or not it has unlawfully produced oil and the question of whether or not it has attempted to unlawfully produce oil are questions of fact to be determined as a part of the due process of law to which the plaintiff is entitled under the due process clause of the Constitution of Oklahoma. Neither the Chief Executive nor the military of this state may determine either question. The power to determine such questions is vested by the Constitution of this state in the Corporation Commission and the courts of this state.

While the decision of the Supreme Court of the United States in R. S. Sterling, Governor, et al. v. E. Constantin et al., supra, is not controlling in this case, the principles of law announced and applied therein are controlling herein. By reason thereof it is unnecessary for this court to analyze all of the many decisions cited in the briefs of the parties to this litigation.

We hold that the taking possession of the property of this plaintiff by the militia under the authority of the executive orders was the taking of the property of this plaintiff without due process of law in violation of the Constitution of Oklahoma and without authority of law. It is evident that there is no adequate remedy at law for the redress of the injury sustained by the plaintiff. Section 6, article 2, of the Constitution provides that the courts of justice of this state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation. The trial court should have heard the evidence and should have made such order against the defendant

Cicero I. Murray, and those acting under his command, as the evidence warranted.

It is contended that the petition of the plaintiff did not state a cause of action because the plaintiff did not allege therein that it was not overproduced and that it was not overproducing its wells. In a brief the defendants say:

"Of course, if the proration law and the Corporation Commission's orders were void, as alleged in the petition, though only as a mere legal conclusion, and if the district court had jurisdiction to so adjudge, then, of course, there was no duty or obligation on plaintiff in error's part to observe that law or those orders, and, therefore, no necessity for its alleging that it had done so or was willing to do so."

They contend that "* * * under no circumstances could plaintiff in error have been entitled to relief at the hands of the district court 'except upon ground that it had not overproduced and was not overproducing its wells. * * *'" In effect, this is an assertion that the plaintiff did not come into a court of equity with clean hands. The trial court held that it did not have jurisdiction of the subject-matter of the action. The asserted equitable defense may not be considered in determining whether or not a court has jurisdiction over the subject-matter of the action. It is one to be considered when jurisdiction of the subject-matter of the action exists. It does not go to the jurisdiction of the trial court to determine the issues. It goes to the question of whether or not equitable relief should be granted. Such a plea is no justification for the denial of relief against the military occupancy of the plaintiff's property without authority of law and in violation of the due process of law clause of the Constitution. The trial court held that it did not have jurisdiction of the subject-matter and dismissed the cause for want of jurisdiction. It was in error in so doing. The Supreme Court of the United States in R. S. Sterling, Governor, et al. v. E. Constantin et al., supra, said that an appropriate answer to such a contention was found in Ex parte Milligan, 4 Wall. 2, 124, and quoted therefrom as follows:

" '* * * Martial law established on such a basis destroys every guarantee of the Constitution, and effectually renders the "military independent of and superior to the civil power." * * * Civil liberty and this kind of martial law can not endure together; the antagonism is irreconcilable; and, in the conflict, one or the other must perish'."

The one that must perish is determined by the provision of the Constitution of Oklahoma that the military shall be held in strict subordination to the civil authorities.

The trial court had jurisdiction of the subject-matter to restrain the defendants Cicero I. Murray and those acting under his command.

The judgment of the trial court is reversed, and the cause is remanded to that court, with directions to proceed in conformity with the views herein expressed.

RILEY, O. J., CULLISON, V. O. J., and BAYLESS and WELCH, JJ., concur. SWINDALL and BUSBY, JJ., concur specially. OSBORN, J., concurs in part and dissents in part. McNEILL, J., absent.

---

SWINDALL, J. (specially concurring). I concur in that portion of the majority opinion relative to the two executive orders of the Governor involved in this case. I concur in the opinion of Mr. Justice BUSBY relative to the power and jurisdiction of the Corporation Commission and relative to the facts necessary to be established by the Russell Petroleum Company in the district court in order to entitle it to relief.

---

BUSBY, J. (specially concurring). This case involves an appeal from the district court of Oklahoma county in which the plaintiff, Russell Petroleum Company, attacks the validity of two entirely different classes of orders. The first attack is against a proration order promulgated by the Corporation Commission of this state, the purpose of which order was to limit and regulate the production of oil in the oil fields of Oklahoma, and in this particular case in the Oklahoma City oil field. The second orders complained of are those promulgated by the Governor of the state of Oklahoma, and which orders of the Governor undertakes to enforce through the state militia.

While concurring in the result announced by the majority of the court, I do not entirely agree with the reasoning therein, nor with the rules announced for the future guidance of the trial court. Some confusion exists in reported decisions and on the part of the bench and bar of this state because of the wording in section 6, article 2, of the Constitution of Oklahoma, and especially because of certain language which I consider dicta appearing in the case of Pioneer Telephone and Telegraph Company v. State of Oklahoma, 40 Okla. 417, 138 P. 1033. For these reasons, and for the further reason that the question of

the power to review and determine the validity of orders of the Corporation Commission of Oklahoma should be settled definitely, I feel it my duty to discuss at further length the equity powers of district courts as affecting such orders, as well as other problems and rules of law herein involved.

In the case at bar the plaintiff, Russell Petroleum Company, attacks the validity of the proration orders issued by the Corporation Commission of the state upon the following theories as set forth in his petition: First, that said orders are made without authority of law. Second, that said orders are not promulgated in the manner prescribed by law. Third, that the orders are unreasonable in that they fix a maximum amount of oil production in the Oklahoma City field at 87,000 barrels per day, whereas the market demand therefor is in excess of that amount. Fourth, that the orders discriminate unjustly by making a different classification and different allowable production of oil for lime formation wells and other wells, and a different allowable production for wells producing water and wells not producing water. Fifth, that the orders are void by reason of an alleged unfair and discriminatory manner of enforcement.

The order of the Corporation Commission complained of by plaintiff, Russell Petroleum Company, is one based on what is commonly known as the proration statutes of Oklahoma, sections 7954 to 7963, inclusive, C. O. S. 1921. [O. S. 1931. secs. 11565-11574]. The validity of all of this statute except that portion referring to a penalty for violation thereof and a section relating to economic waste has been upheld in the Supreme Court of the United States in the case of Champlin Refining Company v. Corporation Commission, 76 L. Ed. 1062, 52 Sup. Ct. 559. It is my view that if the district court of Oklahoma county in its equity powers would attempt to issue an injunction to prevent the enforcement of an order of the Corporation Commission such as is involved in this case, where the Russell Petroleum Company challenges the validity of the proration orders, we would have to hold that the court could examine the order itself and then examine the facts and circumstances on which the order is based, the facts and circumstances surrounding the enforcement of the order, all of which would require the introduction of evidence and a review of the proceedings had before the Corporation Commission. If the district court of Oklahoma county is to be clothed with such power to review Corporation Commission orders and the matters leading up to the promulgation thereof, then

every other district court within the state of Oklahoma would have like power and authority. It is apparent that if the various district courts of Oklahoma should be clothed with and should begin to exercise jurisdiction to review and determine the validity of the orders of the Corporation Commission promulgated within the proper field of the activities of that Commission, then every order which is issued may meet a challenge in every county in the state. The practical effect would be to prevent the proper operation and administration of the functions of the Commission and would in effect hamper if not entirely destroy the Commission.

It might be argued that this particular objection does not in itself constitute a legal basis for denying to the various district courts the right to review these orders. However, I believe that the provisions of our Constitution and our statutory enactments in connection with the powers of the Corporation Commission and the operation thereof were originally inculcated into our laws with a view to eliminating this multitude of litigation and the consequent chaos that would flow therefrom, and that it was the intent and purpose of the framers of the Constitution to centralize and vest in the Supreme Court only, the power to review and determine the validity of the orders of the Commission when they placed therein that portion of section 20, article 9, which reads as follows:

"No court of this state (except the Supreme Court, by way of appeals as herein authorized) shall have jurisdiction to review, reverse, correct, or annul any action of the Commission within the scope of its authority or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the Commission in the performance of its official duties; provided, however, that the writs of mandamus and prohibition shall lie from the Supreme Court to the Commission in all cases where such writs, respectively, would lie to any inferior court or officer."

An examination of the majority opinion of this court will reveal that some importance is attached to the fact that the constitutional provision above referred to contains the words, "within the scope of its authority." This phrase should not be treated in such a manner as to have the effect of authorizing the district courts to review and determine the validity of every order of the Corporation Commission where it is claimed that the order was not made within the scope of the authority of the Commission.

In my opinion such an interpretation of

the meaning of the phrase would operate practically to annul the other connected provisions of the Constitution. I do not mean to say that the occurrence of this phrase in the Constitution has no meaning whatever, but I do not think that such importance should be attached to it, or such interpretation made of it that the other related provisions of the Constitution will be nullified and entirely lost sight of.

The constitutional provision quoted above prohibits any courts of the state except the Supreme Court from reviewing, reversing, correcting, or annulling any action of the Commission. What is the import of the words, "review, reverse, correct or annul"? A review by the Supreme Court would necessarily be for the purpose of determining the validity or legality of the order being reviewed. A reversal by the Supreme Court could properly be made only in the event the order for some reason was determined to be invalid or illegal. A correction by the Supreme Court could only be made in case some portion of the order for some good reason appearing from the evidence and record in connection therewith, or for some legal reason, was improper, invalid, and incorrect. Annulment of the order of the Commission could only be made by the Supreme Court in the event that after a review the order was determined to be invalid.

It seems strange, indeed, that if by the language of our Constitution these powers are exclusively lodged in the Supreme Court, the next phrase occurring thereafter, "within the scope of its authority," should be interpreted to mean that the jurisdiction to "review, reverse, correct or annul" is also lodged in the district courts of the state of Oklahoma.

What, then, is the true meaning and import of the words, "within the scope of its authority," as they appear in the constitutional provisions? All laws, whether constitutional provisions or otherwise, should be interpreted from a reading of the entire law in accordance with the spirit and purpose as it appears therein. Historically, this particular portion of our Constitution was borrowed from the Virginia Constitution, and prior to that the particular phrase now being considered was borrowed from the law of agency, and its particular import in the constitutional provision does not appear to have been previously carefully considered and analyzed by either the Virginia court or this court. In connection with the law of agency it has been variously explained and interpreted. The word "scope" has been defined to mean "mark,"

"target," "design," "aim," "purpose," or "intention." Volume 4, Words & Phrases (2nd Ed.) 485. These various shades of meaning having been given to the word in accordance with the particular application thereof in the different cases. I believe the scope of authority of the Corporation Commission is the field of its activities as determined by the constitutional and statutory provision outlining and defining the same. Such an interpretation will enable us to give full force and effect to the clauses and provisions of the Constitution immediately preceding the phrase itself.

The field of activity of the Corporation Commission is outlined in sections 18 and 19 of article 9 of the Constitution, and numerous statutory enactments supplementing the same. Section 19 of article 9 of the Constitution provides, "that the Commission may be vested with such additional powers and charged with such other duties not inconsistent with this Constitution as may be prescribed by law in connection with the visitation, regulation or control of corporations. * * *"

Among the additional duties and powers within the jurisdiction of the Corporation Commission is enforcement of the oil conservation laws, under which basic order No. 5414 was made, dealing with the regulation and production of crude oil. It is this basic order and ancillary orders thereunder which are involved in this decision and which plaintiff Russell Petroleum Company complains of in its district court action.

In the Oil Conservation Act, which we have under consideration, the Legislature, in accordance with the spirit and intent of the Constitution, again provided the Supreme Court as the forum for appellate jurisdiction. Section 7 of the act, chapter 25, Session Laws 1915 (Stat. 1931, sec. 11571), reads as follows:

"Appellate jurisdiction is hereby conferred upon the Supreme Court in this state to review the action of said Commission in making any order or orders, under this act. Such appeal may be taken by any person, firm or corporation, shown by the record to be interested therein, in the same manner and time as appeals are allowed by law from other orders of the Corporation Commission. Said orders so appealed from shall not be superseded by the mere fact of such appeal being taken, but shall be and remain in full force and effect until legally suspended or set aside by the Supreme Court."

It will be observed that neither the Constitution nor the statutory enactments providing methods of reviewing and controlling the actions of the Corporation Commission mention equity proceedings. Evidently it

was the intent of the Legislature to provide aggrieved parties with adequate and complete remedies at law, either by appeal, mandamus, or prohibition. Suppose that in a proper case these legal remedies are found to be inadequate and the problems in the case require that a court of equity take jurisdiction. Then we are immediately confronted with the question: Which of the courts organized by our state may assume jurisdiction? The answer springs from the latter portion of section 20 of article 9 of the Constitution, where the courts of the state (except the Supreme Court by way of appeal) are positively prohibited from enjoining or interfering with the Commission in the performance of its official duties. It appears to me that the evident purpose of that constitutional provision prohibiting review by all courts of the state save and except only the Supreme Court can only be carried out by holding that equity jurisdiction is lodged in the Supreme Court to the exclusion of the district and superior courts.

The California courts have on several occasions had before them the identical question with which we are now confronted in construing section 67 of the Public Utilities Act of this state. Page 2544, Henning's California Code, section 67 of that Public Utilities Act, contains almost the identical language of our Constitution, with the omission of the phrase, "within the scope of its authority." The California act provides, in substance, that "no courts of this state except the Supreme Court shall review, reverse, correct, or annul any order or decision of the Commission." Several attempts were made in California to call in question the validity of the act through injunctive proceedings in the superior courts of that state exactly as we have the question raised here. The Supreme Court of California has on each occasion denied the right of the inferior courts to assume jurisdiction, announcing as the correct and settled law of that state in an unbroken line of decisions, the following rule:

"It must, therefore, be accepted as the settled law of this state that no court other than the Supreme Court has jurisdiction to review, reverse, correct, or annul any decision or order of the Railroad Commission. Even though the order by the Railroad Commission be palpably erroneous in point of law, until some order by the Supreme Court may be issued to the contrary, the original order of the Commission must stand as a proper and legal order in the premises."

See. also. 137 P. 1119 (Cal.), 159 P. 713 (Cal.), 226 P. 838 (Cal.), 226 P. 841 (Cal.), 246 P. 494 (Cal.).

It is our opinion that the occurrence of the phrase "within the scope of its authority" in Oklahoma's constitutional provision referred to herein was intended only to permit the inferior courts of the state to pass upon validity of orders of the Corporation Commission when such orders were entirely outside the field of activities of the Commission. For instance, if the Corporation Commission should assume jurisdiction and issue an order of replevin, or seek to foreclose a mortgage in actions between private individuals, such order would be outside the field or authority of the Commission as limited by the Constitution and statutes, and its invalidity could be announced by any court. While the meaning and its importance in the Constitution of this phrase, "within the scope of its authority," has not heretofore been particularly analyzed, the question has previously been considered by the court in the case of the City of Tulsa v. Corporation Commission, 96 Okla. 180, 221 P. 1000, where in syllabus paragraph 4 this court announced the rule of law with reference to proceedings in the following language:

"No court of this state (except the Supreme Court by way of appeals as herein authorized) shall have jurisdiction to review, reverse, correct or annul any action of the Commission in the performance of its official duties: Provided, however, that the writs of mandamus and prohibition shall lie from the Supreme Court to the Commission in all cases where such writs, respectively. would lie to any inferior court or officer. (A part of section 20 of article 9 of the Constitution of Oklahoma.)"

It will be noticed from the language of the syllabus, which was based on the Constitution, that the court attached no particular importance to the phrase, "within the scope of its authority," and that the same was entirely omitted from the syllabus.

Again, Mr. Justice Hunt in his concurring opinion in the Julian Case, 145 Okla. 237, 292 P. 841, at page 246 in the Oklahoma Reports, interpreted the provision. of the Constitution under consideration to preclude and prohibit the district court from taking jurisdiction in injunctive proceedings to review, reverse, or annul the actions and orders of the Corporation Commission, and in that case announced the rule as follows:

"* * * No court of the state has jurisdiction to review. reverse. correct. or annul any action of the Corporation Commission within the scope of its authority or to suspend or delay the execution or operation thereof or to enjoin, restrain, or interfere with the Commission in the performance of its official duties."

This question of the jurisdiction of the district court to determine the validity of an order of the Corporation Commission was also considered by this court in the Southern Oil Corporation v. Yale Natural Gas Company, 89 Okla. 121, 214 P. 131. This was an injunctive proceeding instituted in the district court of Payne county, and among other things was considered the validity of an order of the Corporation Commission establishing a rate to be paid for gas. Dealing with this question and the right of the district court to pass upon such orders, this court said:

"* * * The Commission was vested with jurisdiction to fix and establish the rate for gas to be charged by the defendant. It established the rate of 15 cents per 1,000 cubic feet. The sufficiency of the showing made to sustain such order and the reasonableness and justness of the action of the Commission could only be questioned by appeal from the order of the Commission to the Supreme Court."

It will thus be seen that our own court has held that the sufficiency of the evidence and the reasonableness of the findings upon which the Corporation Commission has based an order in the field of its jurisdiction cannot be questioned in the district court.

Considerable argument is made by counsel on both sides in connection with this question based upon the decision of this court in the case of Pioneer Telephone & Telephone Co. v. State, supra. In that case this court said, in discussing this section of the Constitution, that the validity of an order of the Corporation Commission might be challenged in the district and superior courts of this state by a direct proceeding.

We regard this language as it appears in that case as dicta, since the proceeding that it involved was an appeal from the Corporation Commission to this court, and was based upon the theory that to deny the district court and superior court jurisdiction would be an infringement of the constitutional rights guaranteed by section 6, article 2, of the Constitution of this state, reading as follows:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

The reasoning in the Pioneer Telephone & Telegraph Case, supra, was based upon the case of Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150.

I cannot conceive how the lodging of the exclusive jurisdiction of laws involving public service corporations or proration laws in one or several organized courts of the state, such as the Corporation Commission and the Supreme Court, violates section 6, article 2, of the Oklahoma Constitution, above referred to, so long as these courts remain open and available to litigants. In my opinion it is fundamentally the law that a state has the power and authority to designate the particular court in which any class of litigation shall be tried when it is tried in the courts of the state, and the designation of one court to the exclusion of others does not impair or infringe upon the rights of litigants to obtain a proper hearing upon their controversies. 7 R. C. L. p. 977. As for example, our own Industrial Commission, which deals with the Workmen's Compensation Law. Could one of our district courts review an industrial award and issue injunctive relief against the enforcement thereof by virtue of section 6, article 2, of our Constitution? I say not.

The Prentis Case referred to supra, construes a provision of the Virginia Constitution identical with ours and holds that the federal court has the right to review the order of the Commission in cases where federal courts properly take jurisdiction. I am in accord with this decision, for I do not think that any state by virtue of either a constitutional or statutory provision can deprive the federal courts of their jurisdiction, nor can the state by virtue of a constitutional or statutory provision dictate to the federal government which one of its courts shall be vested with exclusive jurisdiction in any controversies. The Prentis Case is distinguished from the case at bar in that it deals with a federal court not within the jurisdiction of Oklahoma. I do mean to say that the state of Oklahoma itself in determining the jurisdiction of its own courts has the right, power, and authority by proper constitutional provision to designate which court shall have exclusive jurisdiction of any legal questions.

I, therefore, conclude that the district court of Oklahoma county had no right to review and determine the validity of an order of the Corporation Commission made in connection with the oil proration and regulation. To hold otherwise would be to hold contrary to the provisions of our Constitution and our statutes, the purpose of which was to lodge exclusive appellate jurisdiction in the Supreme Court of Oklahoma when the validity of such orders are questioned. It has been previously

determined by this court and by the Supreme Court of the United States that the Corporation Commission has jurisdiction to issue oil proration orders such as the one complained of by Russell Petroleum Company. Champlin Refining Company v. Corporation Commission, 76 L. Ed. 1062.

It is my opinion, further, that the plaintiff would not be entitled to the injunctive relief against the Corporation Commission as prayed for in the district court because plaintiff had an adequate remedy at law to test the validity of the Corporation Commission's orders, and that the existence of such remedy at law precludes the assumption of jurisdiction by any court of equity in an injunction proceeding. In the Pioneer Telephone & Telegraph Company Case, supra, about which some confusion has arisen, although suggesting that the district court of the state might have jurisdiction, it was pointed out that there were three remedies available by which an order of the Corporation Commission might be challenged. We quote:

"Three remedies were available to the appellant by which the validity of said order might be challenged: (1) By appeal as provided in section 20 of article 9 (section 238, Williams' Ann. Ed.) of the Constitution; (2) by application made directly to the Commission to set aside order (section 18 of article 9 [section 234, Williams' Ann. Ed.] of the Constitution), and (3) by an action in equity to restrain its enforcement. As a matter of practice the first two remedies should be sought before the last remedy is resorted to."

It is a general principle that a person cannot proceed in a court of equity if he has an adequate remedy at law. The court announced in the Pioneer Case that it was the duty of a person seeking to challenge the validity of orders of the Corporation Commission to first proceed either by appeal or by application made direct to the Commission to set aside the order complained of.

In numerous other cases it has been held by this court that relief against the operation of an invalid order of the Corporation Commission should be obtained by a writ of prohibition in this court to prevent its enforcement. St. Louis & S. F. Ry. Co. v. Love, 29 Okla. 529, 118 P. 259; City of Tulsa v. Corporation Commission, 96 Okla. 180, 221 P. 1000.

The remedy thus afforded by appeal or by an original application to this court for a writ of prohibition was amply sufficient to protect the rights of plaintiff, Russell Petroleum Company, against the infringement of alleged invalid orders of the Corporation Commission. These are the remedies contemplated by the makers of the Constitution, and until and unless they are in some particular respects inadequate, the jurisdiction of a court of equity should not and cannot be properly invoked. Harris v. Smiley, 36 Okla. 89, 128 P. 276; Ferk v. Hall, 119 Okla. 251, 249 P. 1106; Stoner v. Hyde, 82 Okla. 5, 198 P. 328; Ingram v. Board of County Commissioners, 144 Okla. 41, 289 P. 273.

Just here I desire to emphasize the import and effect of a recent opinion written by Chief Justice Riley in the case of State of Oklahoma ex rel. v. H. F. Wilcox Oil & Gas Company, 162 Okla. 89, 19 P. (2d) 572. In that case it was held that the jurisdiction of courts of equity might be properly invoked to enjoin the violation of the oil proration law and of the order of the Corporation Commission made thereunder. It should be noted that that decision harmonizes with this opinion and does not conflict with the views herein announced for the reason that in the Wilcox Case, supra, jurisdiction of the court of equity is invoked to assist in carrying out the orders of the Corporation Commission, and the court is not therein asked to review, reverse, correct, or annul the same. Whereas, in the case at bar the plaintiff, Russell Petroleum Company, is met at the threshold with a constitutional provision forbidding any court except the Supreme Court of Oklahoma to review, reverse, correct, or annul the orders of the Corporation Commission. In the Wilcox Case, supra, Wilcox Company, had it desired to question the validity of the order of the Corporation Commission, could have done so, either (1) by application to the Commission to modify or nullify the order; (2) by appeal to this court as provided by the Constitution and statutes; (3) by asking for a writ of prohibition in this court against the enforcement of the order by the Corporation Commission and the district court.

We now go to a discussion of the executive orders promulgated by Governor Murray and the powers and duties of the Chief Executive where military law is declared. Both plaintiff and defendant have extensively briefed this question. Both plaintiff and defendant have attached much importance to this phase of the case.

The general rule with reference to the powers of the Chief Executive seems to be laid down in paragraph 393, subsection 6, of 12 C. J., page 894, as follows:

"The courts are without jurisdiction to interfere with or to control an executive

officer in the exercise of any power or the performance of any duty of an executive or administrative character in which the Constitution contemplates the exercise of discretion by such officer. In the exercise of executive powers judicial discretion must not be substituted for executive discretion. But where duties purely ministerial in character are imposed on executive officers and they refuse to act or attempt to act in violation of law, they may be compelled to act, or restrained from acting by the courts, at the suit of one who is injured in his person or property, it being within the province of the judiciary to determine whether or not acts of executive officers are authorized by law. The exercise of some authority, discretion, or judgment may be incident or necessary to the performance even of ministerial duties; but such authority, discretion, or judgment is subject to judicial review."

In the case at bar we are concerned with a statute adjudged valid by the United States Supreme Court and by our own court. (Champlin Refining Company Case, supra, and Julian v. Capshaw.) This statute forbids production in excess of transportation and marketing facilities and market demands, and authorizes the Commission to prevent the unfair and inequitable taking of oil. We have orders of the Corporation Commission made pursuant thereto (Basic Order 5414), determining the transportation and marketing facilities and market demands and fixing allowables of production in conformity therewith. We find that neither the act nor any of the orders complained of have ever been adjudged invalid by any court, either temporarily or finally. But, on the other hand, in the case of Russell et al. v. Walker, Frank Russell attacked the validity of the act and the power of the Corporation Commission to make orders thereunder, and its act was held valid and the power to make orders thereunder was approved.

Governor Murray issued two executive orders finding, in effect, that the Corporation Commission orders and the statutes above referred to were being continuously and flagrantly violated to the great injury of the public welfare. He also caused suit to be brought in the district court of Oklahoma county to enjoin violations of the oil proration laws of the state, which case was recently decided in this court on appeal. This is the case of State ex rel. J. Berry King v. H. F. Wilcox, supra. In that opinion we find the following language:

"We are of the opinion that the legislative character of the power so conferred upon the Commission is exclusive. This is a rule-making power, it is in this connection

expressly delegated to the Corporation Commission. Being legislative in character, it could not be conferred upon the courts. In re County Commissioners, 22 Okla. 435, 98 P. 557; Pioneer T. & T. Co. v. Bartlesville, 40 Okla. 583, 139 P. 694; Reagan v. Farmer's L. & T. Co., 154 U. S. 362; Prentis v. Atl. Coast line Co., 211 U. S. 210.

"These conferred powers, legislative in character, when exercised by the promulgation of rules, regulations, and orders, have the force and effect of statutory law of the state. They are rules of action which those governed thereby must obey. Grand Trunk R. Co. v. R. R. Commission, 221 U. S. 400.

" 'The order is a legislative act by an instrumentality of the state exercising delegated authority, * * * is of the same force as if made by the Legislature, and so is a law of the state.'

"Section 7956, C. O. S. 1921, provides:

" 'The Corporation Commission shall have authority to make rules and regulations for the prevention of such waste.'

"Section 7957, C. O. S. 1921, provides, in part:

" 'The Corporation Commission is authorized to so regulate the taking of crude oil or petroleum from any or all such common sources of supply within the state of Oklahoma, as to prevent the inequitable or unfair taking from a common source of supply, of such crude oil or petroleum by any person, firm or corporation.'

"And provision is made by section 7958, C. O. S. 1921, authorizing the Corporation Commission to prescribe rules and regulations for the gauging of each well and 'to make and promulgate, by proper order, such other rules and regulations and to employ or appoint such agents, with the consent of the Governor, as may be necessary to enforce this act.' "

As to whether and when the Governor may call out the militia is a matter of discretion with him. With that the court has nothing to do. He is vested with power and duty of causing the law to be faithfully executed, and it is within his discretion as to when it is necessary for him to interpose the militia for the enforcement of the law. As long as he exercises purely executive functions and powers within the Constitution, then he may not be interfered with by any court. If he abuses this discretion, he is answerable only to the Legislature and the people. But if he undertakes to legislate rules or penalties and then enforce the same, a court of equity may restrain him or his agents. He can only enforce valid exist-

ing laws. He cannot make laws. The militia may only be used as an aid to civil authorities in the enforcement of our laws. Fluke et al. v. Canton, 31 Okla. 718, 123 P. 1049.

In the instant case the plaintiff complains that it is entitled to an injunction against Lieutenant Colonel Cicero I. Murray and the militia under his charge. It complains of an executive order which it says seeks to deprive the plaintiff of plaintiff's property without due process of law. The executive may not legislate, but through the militia has only the power to see that the laws of the state are faithfully executed. As for example, the military may be used by the Governor where necessary to aid district courts to put into effect its judgment and decrees in aid of its equity powers. In the case of R. S. Sterling, Governor, v. E. Constantin, the United States Supreme Court held that the civil court might enjoin the militia where it attempted to take or was taking private property from an owner thereof without due process of law. I approve the view that "The military shall be held in strict subordination to the civil" (sec. 14, art. 2, of the Constitution), and that where the militia, acting under any executive order, seeks to deprive the owner of his property without due process of law, such attempted act is subject to review by, and under the control of, the courts. As was said in the Sterling Case, supra:

"The proper use of that (military) power in this instance was to maintain the federal court in the exercise of its jurisdiction and not to attempt to override it, to aid in making its process effective and not to nullify it; to remove, and not to create, obstructions to the exercise by the complainants of their rights as judicially declared."

And as was said in the same case:

"What are the allowable limits of military discretion and whether or not they have been overstepped in a particular case, are judicial questions."

Plaintiff complains that neither the Chief Executive nor the militia of this state may determine whether or not it has unlawfully produced oil from its wells to the extent that its wells could be shut down by a military order. It argues that there has been no adjudication by any legal tribunal as to whether or not it has overproduced or violated any of the orders or statutes relative to conservation or proration and that no executive fiat or determination by the militia on this question will enable Lieutenant Colonel Cicero I. Murray to shut down its wells. This argument is sound and follows the law.

If this were the only question involved and was based on facts, I would agree with plaintiff and agree that the injunction should be granted. After calling out the militia, neither the Governor nor officers under his command have any power to sit as a court in judgment over the rights of property, but plaintiff has another barrier to overcome before it is entitled to the relief sought as contended. It has come into an equity court seeking an injunction against the militia without first pleading that it has not violated the statutory laws or orders of the Corporation Commission. Before the plaintiff is entitled to the equity relief complained of, it must be first shown that it comes into court with clean hands and that it is purged from any wrongdoing on its part and that it has not violated the statutes or orders upon which the stamp of approval has been placed. The equity phase of this question is treated at greater length hereafter.

Plaintiff complains, further, that the executive orders pleaded herein, being legislative in character, provide for the closing down of its wells unless it pays one-fourth of one cent per barrel to pay the expense of enforcing the proration statutes and that for failure to pay the same the executive order provides for the closing of its wells. This contention on plaintiff's part, standing alone, would entitle it to the relief sought. Neither the Corporation Commission nor the Governor has any authority to make such levy, or to close producing wells for failure to pay such assessment. It is the Legislature's duty to provide for the maintaining of the militia. Section 40, art. 5, Constitution of Oklahoma. If plaintiff were in this court on this contention and no equities intervened, I would approve the relief prayed for. This contention alone as to the law is correct.

Plaintiff complains, further, that the effect of the executive fiat and the taking possession of its wells amounts to a military receivership. Also that the Supreme Court of the United States in the Champlin Refining Co. Case, supra, held section 9 of the act to be invalid. This was the section providing for a receivership in a court of competent jurisdiction for any person, firm, or corporation violating the provisions of the acts in question. This contention, standing alone, would also entitle the plaintiff herein to the relief sought, if no equity question intervened. While not called upon at this time to pass upon this question, and while saying here that there cannot be any military receivership as contended in plaintiff's argument, yet I desire to point out

that this court has already held in the Wilcox Case referred to above that the district court of this state has equity jurisdiction to enjoin the violation of the proration laws. We regard it altogether appropriate to observe here that in the event it becomes necessary, and in order to carry out the purposes of the injunction, the equity court may in a proper case appoint a receiver. In this connection it will be observed that section 518, C. O. S. 1921, provides the cases in which receivers may be appointed by the district court. The 3rd subdivision thereof provides that they may be appointed "after judgment to carry the judgment into effect."

This authority of the equity courts to appoint a receiver for the purpose of carrying the judgment into effect is recognized and the rule in connection therewith is stated in 19 R. C. L., at page 19, and also appears in 23 C. J., at page 53, sec. 6, in the following language:

"The power to appoint a receiver when one is necessary for the preservation of property pending an injunction suit is incident to the power to grant an injunction and the appointment may be made **when it is necessary to render an injunction effective.**"

Numerous authorities are cited in support of the text. This power to appoint a receiver in proper cases as an incident to the enforcement of an injunction does not in anyway conflict with the rule of the Supreme Court of the United States in the Champlin Case which held that the section of the proration laws authorizing the appointment of the receiver was invalid by reason of the fact that the receivership therein contemplated was in the nature of a **penalty**, inasmuch as it provided for the taking possession of the property and for the marketing of the oil produced thereon and was not contingent upon the necessity of enforcing appropriate injunctive relief. Whereas, the receivership herein referred to and approved contemplates the existence of a proper case for injunctive relief and the necessity of a receivership in order that the injunction may be properly enforced, and then only for the purpose of enforcing the injunction. As was said by Chief Justice Riley in the Wilcox Case, supra:

"It is our view that injunctive relief exists without special provision therefor by legislative act, and that the district courts have jurisdiction to apply such relief in proper cases for the enforcement of rights, public and private, existing under and by virtue of the proration laws of Oklahoma."

After all, the primary object of proration is the protection of the common source of supply and to prevent the unequal taking therefrom.

And now we come to the equity of plaintiff's position in the case at bar, which we consider a controlling factor. The petition of the plaintiff in this case alleges an unlawful taking and wrongful withholding of the possession of property belonging to the plaintiff. It seeks injunctive relief against the defendant Cicero I. Murray as Lieutenant Colonel of the militia to restore it to possession of its property and to prevent future interference with that possession.

The plaintiff, however, does not in its petition offer to abide by the orders of the Corporation Commission regulating the ratable taking of oil from the common source of supply, nor does it allege a previous compliance with these orders. It fails to offer to purge itself of any previous inequitable or unlawful taking by lowering its production until previous overproduction shall have been equalized. In this connection it should be noted that basic order No. 5414 of the Corporation Commission provides for the shutting down of overproducing wells in the following language:

"1. All overproduced wells shall be entirely shut in until they have made up such overage and are again 'even'."

It has previously been pointed out that this and other proration orders have been held valid by this court and the Supreme Court of the United States. This particular character of provisions obtained the approval of this court in the case of H. F. Wilcox Oil & Gas Co. v. State. et al. 162 Okla. 89, 19 P. (2d) 572, wherein the court in the opinion used the following language:

"* * * The Corporation Commission has the authority to order an oil well closed because it is overproduced."

There is some division of authority as to whether the person who appeals to a court of equity need make a specific offer in his petition to do equity in the premises. (21 C. J. 400, paragraph 421.) However, it is fundamentally recognized in equity jurisprudence that "He who comes into equity must come with clean hands," and "He who seeks equity must do equity."

The absence of these equity elements in the pleading may be excused for the reason that when this action was originally commenced it was the theory of the plaintiff that the orders of the Corporation Commission relating to proration were invalid and that their invalidity might be judicially determined by the district court. However,

that position is now untenable for the reason that the decision in this case denies the jurisdiction of the district court to review the orders and they now stand as valid and legal and should be so treated by the trial court.

Confronted as it is with these orders of the Corporation Commission regulating the production of oil, it becomes important to determine whether it is necessary for the plaintiff, in order to obtain equitable relief, to show that it is not guilty of misconduct in the premises by an unequal taking of oil from the source of common supply, in violation of the Corporation Commission orders. If it is guilty of such conduct, must it offer to do equity by suffering its wells to remain closed until the lack of production of each well equals the previous overproduction, if any? I feel that it is incumbent on this court to determine this question in view of the fact that counsel for both plaintiff and defendant stated in oral argument (limiting the confession for the purpose of the argument) that the wells of the plaintiff have been previously overproduced.

The fundamental basis of all proration orders is to provide a just and ratable taking of oil from a common source of supply. An overproduction on the part of one producer is an infringement upon the valuable property rights of every other producer taking from the same source of supply. Should the courts of equity of this state lend their process to aid this plaintiff or any other plaintiff in the removal of obstacles when such a removal is to be followed immediately by an infringement on the property rights of the neighbors of the person who has invoked the jurisdiction of the court? Especially should this be done when such infringement is in violation of a lawful order of the Corporation Commission? It appears to me that in a case of this character the preservation of the maxims of equity jurisprudence demand that the courts of equity require as a condition precedent to the granting of relief in such a case that the plaintiff either come into court with clean hands untarnished by any unratable taking of oil, or that plaintiff be required to purge itself of any inequitable or unratable previous overtaking from the source of common supply. This position, in my opinion, is not only consistent with the principles of equity, but is founded upon adequate authority. In the case of Marrs v. City of Oxford et al., 32 Fed. (2d) 134, the Circuit Court of Appeals of the United States of the Eighth Circuit was confronted with a similar problem to the one involved in the case at bar. The plaintiff was seeking injunctive relief against the enforcement of an alleged invalid ordinance which regulated the drilling of oil wells within a certain portion of the city limits of the city of Oxford. In denying the plaintiff equitable relief the court said in syllabus 3:

"Equity will not enjoin enforcement of ordinance regulating drilling for oil within city limits, even if invalid, purpose of which is to protect the rights of all surface owners in pool and yet limit number of wells to be drilled at the suit of one to enable him to drill in violation of the ordinance and appropriate all the oil he can produce without regard to rights of other surface owners."

And again in the opinion it quotes with approval the following language of the Supreme Court of the United States in the case of Ohio Oil Company v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729:

"But there is a co-equal right in them all to take from a common source of supply the two substances which in the nature of things are united, though separate. It follows from the essence of their right and from the situation of the things, as to which it can be exerted, that the use by one of his power to seek to convert a part of the common fund to actual possession may result in an undue proportion being attributed to one of the possessors of the right, to the detriment of the others, or by waste by one or more, to the annihilation of the rights of the remainder. Hence it is that the legislative power, from the peculiar nature of the right and the objects upon which it is to be exerted, can be manifested for the purpose of protecting all the collective owners, by securing a just distribution, to arise from the enjoyment by them, of their privilege to reduce to possession, and to reach the like end by preventing waste."

And followed that quotation with the following statement:

"The basis of a statute, suggested in the Indiana case, is the governmental power to equally protect each surface owner in his right to a common fund. Complaint is made that the city was not vested with that power. Let it be conceded; still it does not follow that a court of equity will lend its aid to one in his effort to take all of a fund in which there is a community interest."

It seems to be equally obvious that the equity courts of this state should not lend their aid to one in his efforts to take a disproportionate share of a common supply of oil in which there is a community interest.

The equity doctrines applicable here are clearly stated in 10 R. C. L. p. 389, from which we quote in part:

"The exclusion of a plaintiff from the peculiar favors of courts of equity results equally, however, where his conduct has been unconscionable by reason of a bad motive or where the result in any degree induced by his conduct will be unconscionable either in the benefit to himself or the injury to others."

And in 10 R. C. L. p. 392, where the text reads as follows:

"Anyone going into a court of equity and asking its aid, whether that aid be such as could be obtained in a court of law, or whether it be of a character obtainable only in a court of equity, submits himself to the jurisdiction of the court, and in asking its aid subjects himself to the imposition of such terms as well-established equitable principle would require."

These principles are also supported and indorsed by the decisions of this court in Dow v. Worley, 126 Okla. 175, 256 P. 56; Robinson v. First Nat. Bank, 107 Okla. 160, 231 Pac. 502; Murphy v. Garfield Oil Co., 98 Okla. 273, 225 P. 676; and International Land Co. v. Marshall, 22 Okla. 693, 98 P. 951.

It seems to be that a review of the foregoing authorities will permit but one conclusion, namely, that in order to obtain equitable relief in the trial court the plaintiff herein should be required either to show that he is not guilty of a previous violation of the proration orders, or if he has violated the same, to purge himself of such unratable taking by refraining from the production of oil until the previous unratable production has been equalized.

In conclusion, my view with reference to the law applicable to the case at bar may be summarized as follows:

1. District courts have no power to reverse, review, vacate, correct, or annul an order of the Corporation Commission. Such orders, when made in the course of official duties, are presumed to be valid, and are to be so treated by inferior courts until their invalidity has been judicially determined in a proper proceeding on appeal to this court, and in the event injunctive relief should be necessary against the orders of the Corporation Commission, this court is vested with exclusive jurisdiction.

2. The Chief Executive of this state has authority to call out the militia to aid in the execution of the laws of the state.

3. The Chief Executive of this state has no authority to legislate or prescribe rules or penalties of his own with reference to property rights, and if he makes such rules and regulations, they are subject to review and to the injunctive processes of a court of equity.

4. The Chief Executive of this state has no authority by fiat to impose charges upon operators in an oil field on a per barrel basis to enforce proration laws, or to shut down wells by executive order for a failure to pay said charges by way of penalties.

5. The Chief Executive of this state may use the militia in proper cases to aid in the enforcement of the orders and judgments of a court of equity.

6. Jurisdiction of courts of equity may be invoked in aid of the enforcement of the Corporation Commission, and injunctive relief in a proper case may be supplemented by a receivership.

7. As a prerequisite to equitable relief, plaintiff must come into court with clean hands or must purge itself of previous inequitable conduct and must offer to do equity.

In accordance therewith, we believe all injunctive relief asked against the Corporation Commission and the members thereof should be in all things denied. As to the defendant Lieutenant Colonel Cicero I. Murray, the cause should be remanded to the district court of Oklahoma county, where the cause may proceed to trial as against him in accordance with the views outlined herein. As a condition precedent to equitable relief against Lieutenant Colonel Cicero I. Murray, the plaintiff should show himself entitled thereto in accordance with the views herein expressed.

WELCH, J. I concur with the majority opinion.

If the plaintiff, Russell Petroleum Company, admits the inequitable taking of oil, or admits it is violating the proration laws of Oklahoma, then I concur with that part of the special concurring opinion of Mr. Justice BUSBY as to the requirement that the plaintiff must purge himself, and must do equity along with his request that equity grant him relief from the acts of others.

OSBORN, J. (dissenting). In dissenting in part from the majority opinion of the

court, I deem it proper at least briefly to state my views. I shall not attempt to elaborate upon the compelling principles which require my dissent.

First. I desire to concur in that part of the majority opinion holding that the district court is without jurisdiction to review, reverse, correct, or annul the orders of the Corporation Commission within the scope of its authority. Under the express provisions of section 20, art. 9, of the Constitution, exclusive jurisdiction is conferred upon this court.

Second. The plaintiff is not entitled to any equitable relief, for the reason that the petition itself does not allege that the plaintiff has not heretofore committed waste within the meaning of our statutory provisions relating to the fair and equitable taking of oil from a common source of supply, which statutory provisions have been declared valid by this court and by the Supreme Court of the United States. C. C. Julian Oil & Royalties Co. v. Capshaw, 145 Okla. 237, 292 P. 841; Champlin Ref. Co. v. Corporation Commission, 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062. On the other hand, the allegations of the petition disclose a diligent effort to avoid the orders of the Corporation Commission, and an attempt to defeat the same in a court wholly without jurisdiction to review said orders. Not only should plaintiff allege, but it should also prove, under said allegation, that it has not heretofore violated the public policy of the state as contained in the provisions of law relating to the production of oil, and the orders of the Corporation Commission made pursuant to authority therein vested, but to induce equity to intervene, it should also express its willingness to operate its property within the spirit and limit of the statutory and regulatory requirements of the law and its constituted governing body. "He that hath committed iniquity, shall not have equity." International Land Co. v. Marshall, 22 Okla. 693, 98 P. 951; Marrs v. City of Oxford, 32 F. (2d) 134; Wellsville Oil Co. v. Miller, 44 Okla. 493, 145 P. 344; Bearman v. Dux Oil & Gas Co., 64 Okla. 147, 166 P. 199; Deweese v. Reinhard, 165 U. S. 386, 41 L. Ed. 757.

Third. Section 2, art. 6, of the Constitution provides:

"The supreme executive power shall be vested in a Chief Magistrate, who shall be styled 'The Governor of the State of Oklahoma'."

Article 4 of the Constitution provides:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments, the legislative, executive and judicial, and except as provided in this Constitution, the legislative, executive and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

Section 8, art. 6, of the Constitution provides:

"The Governor shall cause the laws of the state to be faithfully executed, * * * and he shall be a conservator of the peace throughout the state."

Section 6, art. 6, of the Constitution provides:

"The Governor shall be Commander-in-Chief of the militia of the state except when in service of the United States, and may call out the same to execute the laws, protect the public health, suppress insurrection and repel invasion."

Under the express provisions of article 4, supra, the three departments of government are free and independent of each other. The judicial department can no more control the executive department than can the executive department control the judicial department. This has heretofore been the holding of this court. In the case of State ex rel. Attorney General v. Huston, 27 Okla. 606, 113 P. 190, Mr. Justice Williams, speaking for the court, said:

"In this action the question of jurisdiction is squarely raised by the counsel for the Governor, and we conclude that the courts of this state may not control the actions of the Chief Executive of the state. But, in so holding, it does not follow that the Governor of a state is above the law. He and his acts are as much subject to the law as the humblest citizen of the commonwealth. But a tribunal other than the courts must be resorted to for a correction of his official wrongs, if any, to wit, the Legislature. So far as his official acts may be contrary to law, and therefore void, that question may be raised by private parties before the courts in determinations as to private rights when the Governor is not a necessary party."

See, also, Norris v. Cross, 25 Okla. 287, 105 P. 1000; City of Oklahoma City v. Haskell, 27 Okla. 495, 112 P. 992; State v. Cruce, 31 Okla. 486, 122 P. 237.

The statutes declaring the public policy of the state relating to the production of oil having been declared valid, and the basic order of the Corporation Commission thereunder being a legislative act, "by an instrumentality of the state exercising dele-

gated authority" and having "the same force as if made by the Legislature" (Grand Trunk R. R. Co. v. Railroad Commission, 221 U. S. 400), the Governor issued an "Executive and Military Order" wherein he recited:

"Whereas, the Corporation Commission has no authority to enforce its orders other than to fine, as for contempt, and grave doubt exists that it has this authority, but, if so, this in effect is but to license the violation of the law; and

"Whereas, great quantities of oil has been and is now being taken out of the field by certain companies, in violation of the proration orders of the commission; and

"Whereas, an honest, rigid enforcement of the law is essential for its prevention, and particularly for maintaining a reasonable and stable price for crude oil and its by-products, and for the collection of revenues due the state and those inuring to the school fund on the school lands leased for oil; and

"Whereas, it is incumbent upon the Governor, under article 6 of the Constitution, to see that the laws are upheld. * * * It therefore becomes essential for the Governor of the State of Oklahoma to exercise such executive powers as Chief Magistrate, and to invoke military rule and the military arm of the state for the purposes aforesaid; * * *"

Thereafter, the Governor issued a further or supplemental executive and military order, reciting:

"Now, therefore, it is declared by the Chief Executive that it was and is the purpose and intention of the said order to furnish the force and means necessary to enforce and carry out the orders of the Corporation Commission, made and promulgated for the purpose of regulating the production, transportation, and marketing of crude oil in the Oklahoma City field, the Corporation Commission being powerless to enforce its own orders. * * *"

In promulgating these orders, we think the Governor was vested by the Constitution with a discretion as the Chief Magistrate of the state, which, when exercised by him, was conclusive of the necessity of his action, and not reviewable by the courts. Moyer v. Peabody, 212 U. S. 78; Sterling v. Constantin, 53 S. Ct. 190.

The power and duty to cause the laws to be faithfully executed, and the discretion to call out the militia for that purpose, are executive functions which are committed to the executive department of our government, and to say that the judicial department of our state can control the exercise of such function is to permit the judicial depart-

ment to exercise executive functions, and to strike down the theory of three separate, independent, and co-ordinate branches of our government. If the judicial branch cannot interfere with the executive branch in calling out the militia, it logically follows that it cannot interfere with the use of such militia when acting under orders from the executive branch.

The Constitution enjoins upon the Governor the duty to faithfully execute the laws and commits into his hands the power to call out the militia to perform this duty. If he is commander-in-chief of the militia when they are on dress parade, he is commander-in-chief when they are acting under his orders authorized by the Constitution itself. For his errors of judgment and discretion, or his invasions of personal or property rights, he is answerable to the people of his state who placed these high responsibilities in his hands, but he is not answerable to his co-equal and co-ordinate branch of the government—the judicial department —nor is he answerable to the other co-equal and co-ordinate branch of the government— the legislative department—except as provided by the Constitution, and that by way of impeachment proceedings. Not even this court, and certainly not the district court, an inferior tribunal also established by the same Constitution, can substitute itself for the supreme executive authority vested by the Constitution and the people in the Governor.

In the case of Martin v. Mott, 25 U. S. 19, it is said:

"* * * The power itself is confided to the Executive of the Union, to him who is, by the Constitution, 'the commander-in-chief of the militia, when called into the actual service of the United States,' whose duty it is to 'take care that the laws be faithfully executed,' and whose responsibility for an honest discharge of his official obligations is secured by the highest sanctions. He is necessarily constituted the judge of the existence of the exigency in the first instance, and is bound to act according to his belief of the facts. If he does so act, and decides to call forth the militia, his orders for this purpose are in strict conformity with the provisions of the law; and it would seem to follow as a necessary consequence that every act done by a subordinate officer, in obedience to such orders, is equally justifiable. The law contemplates that, under such circumstances, orders shall be given to carry the power into effect; and it cannot, therefore, be a correct inference that any other person has a just right to disobey them. The law does not provide for any appeal from the judgment of the President, or for any right in subordinate officers to review his

decision, and in effect defeat it. * * * It is no answer that such a power may be abused, for there is no power which is not susceptible of abuse. The remedy for this, as well as for all other official misconduct, if it should occur, is to be found in the Constitution itself. In a free government, the danger must be remote, since in addition to the high qualities which the Executive must be presumed to possess, of public virtue, * * * the frequency of elections, and the watchfulness of the representatives of the nation, carry with them all the checks which can be useful to guard against usurpation or wanton tyranny."

This same language can be applied to the Chief Executive of a state and his acts under the Constitution, especially in so far as judicial review may be had in the state courts. See: State v. Holden, 64 N. C. 829; Appeal of Hartranft, 85 Pa. 433; Kendall v. United States, 12 Pet. 610; In re Boyle, 6 Idaho 609, 57 P. 706; In re Moyer, 35 Colo. 159, 85 P. 190; State v. Brown, 71 W. Va. 519, 77 S. E. 243; Hatfield v. Graham, 73 W. Va. 759, 81 S. E. 533; In re McDonald, 49 Mont. 454, 143 P. 947.

When the laws of the state are being openly and flagrantly violated; when the machinery of government becomes so weak and impotent that wealthy malefactors can defy the law and smile at its impotency, the Governor may use all the sovereignty of the state, civil, equitable, and military, to uphold the cherished laws and public policy of the state. The courts cannot be made a sanctuary whereunto those who have committed iniquity may flee for license to ignore the fundamental laws and public policy of the state. The militia of this state was called into service, not to punish offenders, but to uphold the majesty of the law. The courts of the state are without power, authority, or jurisdiction to substitute themselves for the Chief Executive, on whom the Constitution has placed this responsibility.

I do not mean to intimate herein that there is not a tribunal authorized to review the action of the Chief Executive in case he or his agents violate guaranteed constitutional rights. Such power of review, however, is vested in the federal, instead of the state, judiciary.

There being no jurisdiction in the district court of Oklahoma to inquire into the acts of the militia, and no process to which they are amenable, and this cause having come to this court on appeal from a judgment of the district court, I deem that the other questions discussed in the majority opinion are wholly beyond the proper province of this court, and I therefore dissent.