**SIMMONS v. STUCKEY, County Treas., et al.**

No. 16569—Opinion Filed Oct. 27, 1925.

(Syllabus.)

1. **Municipal Corporations—Counties—Limitations on Indebtedness—Power of Legislature.**

Section 9 of article 10 of the Constitution, except the provisos regarding extra levies for schools, is a limitation directed to the Legislature of the state, the power of taxation being an inherent power of the legislative branch of the government, and it is within the discretion of the Legislature to control and provide to what extent the municipal subdivision of the state may levy taxes, and the decision of the Legislature in this matter is conclusive upon the courts, and as long as the power granted to the various municipal subdivisions of the state is within the constitutional limitation, the courts have no authority to interfere with the authority granted. Schaff v. Borum, Co. Treasurer, 82 Okla. 287, 200 Pac. 191.

2. **Same—Apportionment of Tax Levies.**

Where the Legislature has authorized additional apportionment of tax levies for counties and other municipalities of the state, and such apportionment, together with the levies previously authorized, does not exceed the constitutional limitation, such additional levies so authorized are constitutional and valid.

Error from District Court, Tulsa County; Luther James, Judge.

Action by John H. Simmons against W. W. Stuckey, County Treasurer of Tulsa County, et al. Judgment for defendants, and plaintiff brings error. Affirmed.

M. C. Rodolf, for plaintiff in error.

H. O. Bland, Harry L. S. Halley, Byron Kirkpatrick, Co. Atty., James Harrington, Asst. Co. Atty., Geo. F. Short, Atty. Gen., and V. P. Crowe, Asst. Atty. Gen., for defendants in error.

LESTER, J. The parties to this action will be referred to as they appeared in the district court.

The plaintiff commenced this action in the district court of Tulsa county, Okla., by filing a petition in which he alleged that certain items of tax included in the tax levy for the fiscal year of 1924-25, against his property, were illegal and erroneous. The case was tried to the court upon an agreed statement of facts. Judgment was rendered in favor of the defendants, and plaintiff prosecutes this appeal to reverse said judgment.

The instrument which contains the agreed statement of facts is voluminous and sought to cover every fact necessary to be determined. It was agreed that the plaintiff had made all the requirements of the law necessary to recover judgment if it should be adjudged that certain items contained in the tax levy were erroneous and illegal.

It was agreed that the total assessed valuation of all property in Tulsa county, subject to ad valorem taxation, as approved by the county board of equalization and the State Board of Equalization, was the sum of $152,082,627, and that the mill rate of levy for all purposes in the general fund of Tulsa county was determined and fixed by the excise board of said county upon its valuation.

It was further stipulated and agreed by and between the parties that, according to the last federal census, the population of Tulsa county was 109,023. It was further agreed that the total levy for all county purposes was as follows:

"For current expense, 4 mills;

"For free fair, ¼ mill;

"For purchase of real estate for the erection of livestock and exhibition buildings and improvements thereon for the use and purpose of the free fair association of said county, ¼ of a mill; .

"For a tubercular fund, .09 of a mill;

"For separate schools, 1.4 mills;

"For county highway tax fund, 2.41 mills."

It was conceded at the trial of said cause that the amount levied for free fair, which was ¼ of a mill, was erroneously levied, and judgment was rendered for the plaintiff on that item.

Section 9, article 10, of the Constitution of the state of Oklahoma, relating to total tax on an ad valorem basis, is as follows:

"Except as herein otherwise provided, the total taxes, on an ad valorem basis, for all purposes, state, county, township, city or town, and school district taxes, shall not exceed in any one year thirty-one and one-half mills on the dollar to be divided as follows:

"State levy, not more than three and one-half mills; county levy, not more than eight mills: Provided, that any county may levy not exceeding two mills additional for county high school and aid to the common schools of the county, not over one mill of which shall be for such high school, and the aid to said common schools shall be apportioned as provided by law; township levy, not more than five mills; city or town levy, not more than ten mills; school district levy, not more than five mills on the dollar for school district purposes, for support of

common school: Provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

It will be observed that the county may levy not more than 8 mills for general purposes, and that it may levy in addition thereto not exceeding 2 mills for county high schools and aid to common schools of the county, not over 1 mill of which should be for high schools; and the aid to said common schools should be apportioned as provided by law.

The defendant contends that the levy made by Tulsa county in excess of the 4 mill levy was made by virtue of the several acts of the Legislature which provided that these several levies might be made in addition to the other current expenses.

In considering whether or not the Legislature had the right to make an apportionment of the tax levy of the several counties of the state, when such apportionment was within the constitutional limitation, we are met at the threshold with the question as to whether or not the Legislature is authorized by the Constitution to make an apportionment of levies for counties and other municipal subdivisions of the state.

In the case of Schaff, Rec., v. Borum, Co. Treasurer, 82 Okla. 287, 200 Pac. 191, the court said:

"Section 9 of article 10 of the Constitution, except the provisos regarding extra levies for schools, supra, is a limitation directed to the Legislature of the state, the power of taxation being an inherent power of the legislative branch of the government, and it is within the discretion of the Legislature to control and provide to what extent the municipal subdivision of the state may levy taxes, and the decision of the Legislature in this matter is conclusive upon the courts, and as long as the power granted to the various municipal subdivisions of the state is within the constitutional limitation, the courts have no authority to interfere with the authority granted. Gray's Limitations of Taxing Power and Public Indebtedness, secs. 2005, 2006; Beck, Tax Collector, v. Allen, 58 Miss. 143; Cooley's Third Edition on Taxation, pages 554, 555; 37 Cyc. page 763; State v. Street et al., 117 Ala. 203; Thompson et al. v. Rearick, 33 Okla. 283, 124 Pac. 951."

In the case of Lusk et al. v. Botts, County Treasurer, 64 Okla. 52, 166 Pac. 172, was involved the question as to whether or not the .03 mill levy for tick eradication was part of the levy for current expenses of the county, and in excess of the limit fixed by section 7376, Revised Laws 1910, and, for that reason, was void. The court held against the contention of the plaintiff and sustained the statute which permitted the excise board in each county in the state to levy, in addition to the other levies provided, a sum not to exceed one mill for tick eradication.

A similar question was presented to this court in the case of Lusk et al. v. Eminhiser, 53 Okla. 785, 158 Pac. 915. The contention made in that case was to the effect that the tax levied for state highway purposes was governed by the limitation upon the township levy contained in section 7376. Mr. Justice Kane, in delivering the opinion of the court, said:

"There is but small room for doubt that it was the intention of the Legislature to authorize an additional levy of not more than two mills' drag tax upon the taxable property of the township. The act requires all or some part of such an expenditure each year as the township's contribution toward carrying out the policy of the state in the matter of establishing a uniform system of good roads. So that, while this tax is levied for a township purpose, it also subserves an important state purpose, and in this respect it differs from the ordinary township purpose the Legislature had in mind, at the time it placed the limitation of 1½ mills upon the township levy by the enactment of section 7376. * * * It is our opinion that, as to this drag tax, the intention of the Legislature was to require the townships and counties of the state to aid the state in its general plan for the construction and maintenance of a system of good roads entirely unhampered and unhindered by any prior statutory limitations upon taxation, except the constitutional limitation of eight mills elsewhere mentioned in the act, and to continue in force the limitations contained in section 7376, supra, as to the ordinary county and township levies."

In our judgment the Legislature is authorized under section 9, article 10, of the Constitution, to designate the amount that may be expended for current expenses, and in addition thereto may authorize an additional levy for current expenses when the language of the Legislature is sufficiently clear and plain to indicate that such authorization was in addition to the amount previously fixed by the Legislature for current expenses, and provided always that the additional levies, together with the levies previously made, do not exceed the constitutional limitation.

The excise board in making its levy for

the fiscal year, according to the agreed statement of facts, provided that the rate of taxes be fixed as follows:

"Current Expenses _____4.00 Mills
"Free fair _____ .25 Mills
"For purchase of real estate free
    fair _____ .25 Mills
"For tubercular fund _____ .09 Mills
"For separate schools _____1.40 Mills
"For county highway fund _____2.41 Mills

        "8.40 Mills"

Section 9692, C. O. S. 1921, is as follows:

"In all counties, the total levy for current expenses of each county, city, town, township or school district shall not exceed in any one year the following:

"County levy not more than four mills, provided that any county may levy not exceeding one mill additional in aid of the common schools of the county; and provided, that where the assessed valuation of any county is less than $5,000,000, the county levy shall not exceed seven mills for current expenses, and one mill in aid of the common schools of the county; provided, further, that where the assessed valuation of any county is less than $13,500,000, and not less than $5,000,000, the county levy shall not exceed six mills for current expenses and one mill additional in aid of the common schools of the county; city levy not more than six mills; incorporated town levy not more than four mills; township levy not more than one and one-half mills; school district levy for the support of common schools, not more than five mills. Provided, that the words 'current expenses' as used in this section shall not include an annual sinking fund to pay the bonded indebtedness of such county, city, town, township or school district at its maturity, or the interest falling due on its outstanding bonded indebtedness, or any judgment against such county, city, town, township or school district. Provided, the county excise board in each county in this state is hereby authorized to levy, in addition to the levies provided for herein, not to exceed one mill for tick eradication in such county. Provided, that this act shall be construed (not) to repeal or modify the provision of section 5, chapter 30 of the Session Laws, 1916, authorizing additional levies of taxes for county road and bridge purpose."

Under the agreed statement of facts the valuation of all property in Tulsa county for the fiscal year 1924-25, subject to ad valorem taxation, was in the sum of $152,082,627. Therefore, the county would fall within that class of counties in which by virtue of section 9692, C. O. S. 1921, supra, the rate for current levy is fixed at 4 mills.

There is no contest over the levy of 4 mills made by the excise board for current expenses.

The next item contained in the tax levy was .25 mills for free fair. It was conceded by both parties to this action in the court below that this item should be included in the 4 mill levy, by reason of the fact that such item was not authorized as an additional levy under the statutes of this state. Judgment in the lower court on this item was rendered in favor of the plaintiff.

The next item challenged by the petition of the plaintiff is .25 mill levy for the purchase of real estate and the erection of livestock and exhibition buildings. Chapter 85 of the laws of the Special Session of the Legislature of 1924 is as follows:

"The county commissioners of all counties in the state of Oklahoma, having not less than 105,000 population, and not more than 110,000 population, as now or hereafter shown by the federal decennial census, are hereby authorized and empowered to include an item in the estimate for the county budget for the next five (5) fiscal years, not to exceed one-fourth (¼) mill for each of said fiscal years, for the purchase of real estate, not to exceed two hundred and forty (240) acres, and for the erection of livestock and exhibition buildings and improvements thereon, for the use and purpose of a free fair association of such county; and the county excise board is authorized and empowered to levy the amount stated herein to cover the same; and the county, through its county commissioners, is hereby authorized and empowered to purchase real estate not to exceed two hundred and forty (240) acres as aforesaid, for the purposes above set forth. Provided, the levy herein provided for may be an addition to the maximum levy allowed by law, for the support of the county government; and provided, further, that real estate purchased for the purposes aforesaid shall be purchased and owned by the county."

It was agreed by the parties to this action in the district court that, according to the last federal census, the population of Tulsa county was 109,023. Therefore, the population of the county was sufficient to place it within the class above mentioned under the statute.

The plaintiff urges that the statute is unconstitutional by reason of the following language contained therein:

"The levy herein provided for may be an addition to the maximum levy allowed by law."

The plaintiff claims that this language is intended as an attempt on the part of the Legislature to make a levy beyond a con-

stitutional limitation. We hold that this construction cannot be applied to the language used therein; but such language has reference only to the statutory limit previously fixed by the Legislature, and as such previous limitation, together with ¼ mill additional levy, did not exceed the constitutional levy, then in that event the Legislature did not contravene section 9 of chapter 10 of the Constitution. It clearly appearing that such additional levy, together with the amount previously fixed by the Legislature, did not exceed the constitutional limit, we hold that the ¼ mill levy was authorized by section 1, chapter 85, Session Laws of 1923-24.

The next item which is in dispute is that of .09 mills for tubercular fund. Section 8970, C. O. S. 1921, makes the following provision:

"For the purpose of defraying the expense of transportation, and treatment of patients afflicted with tuberculosis at the district sanatoria herein provided for, the excise board of each county is authorized to make an annual levy upon all property in the county, subject to taxes, on an ad valorem basis, of not exceeding one mill per annum, which is hereby declared not to be a current expense and to be for a special purpose, known as 'Tuberculosis Fund,' in addition to the maximum levy for current expenses now provided by law."

It was evidently the intention of the Legislature in creating tuberculosis sanitoria, to have the co-operation of the counties of the state, in caring for tuberculosis patients, by permitting the counties to make a levy for the purpose of paying the expenses of transportation and treatment of persons afflicted with tuberculosis, in order that the entire expense in caring for these unfortunates might not fall entirely upon the state government.

The statute above quoted declares the same not to be a current expense and to be for a special purpose, known as a "Tuberculosis Fund," in addition to the maximum levy for current expense. We hold that this additional levy made for this fund was fully authorized by the Legislature, and there is no merit in the contention of the plaintiff.

The next item contested by the plaintiff is that of 1.40 mills levied for the purpose of separate schools.

In providing the revenues for separate schools, and as in addition to the 8 mills levy provided for by section 9 of article 10 of the Constitution, supra, this levy was evidently made by the excise board under authority of section 9692, C. O. S. 1921, supra, and as authorized by chapter 48, Session Laws 1921, and as construed by this court in the following cases: Chicago, Rock Island Railway Co. v. Lane, 69 Okla. 145, 170 Pac. 502; Board of Education w. Excise Board of Logan Co., 86 Okla. 24, 206 Pac. 517.

That portion of chapter 48, Session Laws 1921, supra, which has reference to separate schools is as follows:

"For the separate schools of the county, if any, with amounts for the purchase of grounds in each district, the erection or purchase of buildings in each district, the salaries of teachers, and all other maintenance expense in each district, separately stated, and in such amounts as may be necessary to provide accommodations, facilities, and school term in the separate schools, if any, in each district in the county equal to the accommodations, facilities, and school term provided for the other regular public schools in the same district, even though such appropriations require a levy exceeding the limit otherwise provided by acts of the Legislature on the levy for all county purposes; for county high school, if any, with buildings, salaries of teachers, and other maintenance expense, separately stated; for aid to the common schools of the county to be apportioned to the various districts on warrant of the county clerk, at the same time and on the same basis as the state school fund is apportioned to the districts of the county; provided, however, that in the event the appropriation for the separate schools in the county, together with appropriations for other county purposes, would require a levy on the assessed valuation of the county exceeding the constitutional limit of such levy, or such limit as may hereafter be provided by law, then the county excise board may, at the time of making the levy, provide that so much of the levy for aid to the common schools be set apart and used for the benefit of such separate schools in the county as will be necessary to furnish the amount of the appropriation for such separate schools which is over and above the amount which can be levied for such schools under the law fixing the limit of the county levy for all purposes; provided, however, that the appropriation for aid to the common schools, including separate schools, if any, and for aid to the county high school, if any, shall not aggregate an amount greater than the equivalent of a levy of two mills on the assessed valuation of the county for the year."

In the case of the Board of Education of Guthrie v. Excise Board of Logan County, 86 Okla. 24, 206 Pac. 517, this court said:

"The phrase, 'and in such amounts as may be necessary to provide accommodations,

facilities, and school term in the separate schools, if any, in each district in the county equal to the accommodations, facilities, and school term provided for the other regular public schools in the same district, even though such appropriations require a levy exceeding the limit otherwise provided by acts of the Legislature on the levy for all county purposes,' must be construed to mean that sufficient levy must be made for the accommodation and maintenance of the separate schools in the county wherever they exist, although the levy may go beyond the limitation prescribed by the Legislature in other acts, such as the limitation provided for in the act of May 15, 1913, Session Laws 1913, page 445, prescribing a certain limitation for counties according to the population. Herein, in act of 1921, we find specific statutory authority granted by the Legislature to make a sufficient levy for the maintenance of the separate schools of a maximum up to 8 mills, and if insufficient under the provisions of section 9, article 10, of the Constitution, supra, and this act, an additional levy of 2 mills may be made. The subsequent clause in the act of the Legislature approved March 31, 1921, providing: 'However, that the appropriation for aid to the common schools, including separate schools, if any, and for aid to the county high school, if any, shall not aggregate an amount greater than the equivalent of a levy of two mills on the assessed valuation of the county for the year' is a grant of power to t_e county excise boards to make an additional levy of 2 mills in aid of the common schools, including separate schools, and for aid to the county high school. This part of the act is in harmony with the proviso of section 9, article 10, of the Constitution, and contemplates that if the appropriation made by the excise board of the respective counties where separate schools are maintained within the constitutional limitation of 8 mills is insufficient to properly maintain such schools, an additional 2 mills may be levied. But it was never intended or contemplated by the Legislature that an appropriation by county excise boards for the maintenance of separate schools could never in any event exceed a levy of 2 mills. A consideration of the whole act of the Legislature approved March 31, 1921, supra, makes it clear that it was the intention of the Legislature that a sufficient levy must be made for the maintenance of separate schools in every county where the same are maintained, even though such appropriations require a levy exceeding all other statutory liimtations provided by the prior acts of the Legislature, as long as the levy is within the constitutional limitation. That it is the duty of the board to make an adequate levy for the maintenance of the separate schools with like facilities and terms as the other schools of such counties. That is, the levy may be made until a maximum levy of 8 mills has been reached, and if such levy is insufficient to

properly maintain the separate schools, the board is then authorized to make an additional levy of 2 mills in aid of the common schools, including separate schools, all of which additional levy, in the absence of a county high school, may be used in aid of the common schools, including separate schools. In this situation the maximum levy a county may make is 10 mills.

"It was the duty of the county excise board of Logan county to make an adequate appropriation for the maintenance of the separate schools in district No. 60 sufficient to maintain the schools within the district according to the annual budget prepared and submitted by the board of education of the district for the maintenance of such schools. District No. 60 being an independent school district, Senate Bill 1 o. 71, Session Laws 1919, p. 47, specifically provides that the county excise board shall cause a levy to be made on all of the taxable property sufficient to pay the cost of supporting and maintaining such separate schools and for purchasing sites and erecting school buildings.

"Chapter 48, Senate Bill No. 323, act of March 31, 1921, specifically authorized the county excise board of Logan county to make an adequate levy for the maintenance of separate schools and removed all statutory limitations in making such levy except the constitutional limitation of 8 mills, and. if insufficient, authorized the excise board to make an additional levy of 2 mills in accordance with the constitutional provision found in the proviso of section 9, article 10, of the Constitution."

In view of what the court has heretofore said in reference to chapter 48, Session Laws 1921, we hold that the excise board was authorized to make a levy of 1.40 for separate schools.

The next contention is over the levy of 2.41 mills for county highway fund. The latter clause of section 5, chapter 30, Session Laws 1916, provides as follows:

"* * * It is hereby declared that the meaning and intent of said section is as follows:

"In addition to the one mill levy authorized for common school purposes and in addition to the levies authorized for current county expenses by chapter 195, Session Laws 1913, the county excise board in each county in this state is hereby authorized, at the option of said board, to make an additional levy for road purposes upon all property in said county subject to taxation upon an ad valorem basis, in an amount which, together with the aforesaid levies authorized to be made in said chapter 195. Session Laws 1913, shall not exceed a total of eight (8) mills; said additional levy when made and collected shall be credited to the county road construction fund, and

shall be used for the construction and maintenance of state highways under the supervision of the board of county commissioners as provided in this act."

The constitutionality of this section was the subject of attack in the case of the Chicago, R. I. & P. Ry. Co. v. Willis, County Treasurer, 75 Okla. 13, 181 Pac. 307. The court in its syllabus said:

"Section 5, c. 30, Session Laws 1916, construed, and held to be amendatory of section 2, art. 3, c. 173, Session Laws 1915, and not a construction thereof, and therefore not unconstitutional as a legislative encroachment upon the power conferred upon judicial department of the state by the Constitution."

In the third paragraph of the syllabus in the case of Schaff v. Borum, County Treasurer, 82 Okla. 284, 200 Pac. 191, the court said:

"The act of March 15, 1915 (chapter 173, Sess. Laws 1915), creating a department of highways and relating to roads and highways, contemplates the permanent improvement of state and county highways, and the construction and maintenance of such roads, and the county excise board, of the respective counties of the state are vested with authority to levy taxes for the purpose of carrying into effect the provisions of said act, so long as such levies, when added to the levy for current expenses of the respective counties, do not exceed the constitutional limitation of 8 mills."

It being shown by the agreed statement of facts that this levy, when added to the levy for current expense of the county, did not exceed the constitutional limitation of 8 mills, the same was authorized as an additional levy above the 4 mill levy permitted by the statute.

The plaintiff in his petition alleged that certain items levied for and on behalf of the city of Tulsa were invalid. The following is an agreed statement of facts relating to these levies:

"1. That the city of Tulsa made a levy of 8.7 mills against the property of the plaintiff.

"2. That this levy was 2.7 mills in excess of the amount allowed by section 9692, Compiled Laws of 1921.

"3. That .53 mill of the 8.7 mill was for library purposes and that .08 mill was for cemetery purposes.

"4. That on July 15, 1924, there was a special election held in the city of Tulsa, submitting the question to the voters of the city of Tulsa whether or not the mayor and board of commissioners should be authorized to make an additional levy of 2¾ mills in excess of the statutory city levy for current expenses of six mills; that at said election the voters authorized the mayor and board of commissioners to make this excess levy, that this election was authorized by chapter 61 of the Session Laws for the Special Session of 1924.

"5. That in making the levy for library purposes the mayor and board of commissioners and the Tulsa county excise board were acting under section 9528 of the Oklahoma Compiled Statutes of 1921."

It will be observed that in paragraph 4 of the agreed statement of facts, relating to the levies made for the city of Tulsa, which is dependent upon an election held by the city, we find the following language:

"That the election was authorized by c. 61 of the Session Laws of the Special Session of 1924."

We therefore assume, under said agreement, that all the facts existed which permitted the city to hold an election for such purposes as was provided by chapter 61, Session Laws of 1924.

The plaintiff makes no attack on the legality of the election, and we therefore assume that such election permitted the county excise board to levy such tax as was authorized by the voters of the city in addition to the 6 mill allowed by the statute for current expenses.

There is also a contest over the .53 mill for library purposes levied by the excise board. Section 9528, C. O. S. 1921, is as follows:

"The excise board of any county may approve a tax levy, in addition to any tax levy now authorized for current expenses of the cities of the first class, not to exceed two mills on the dollar annually on all taxable property of the city for such purpose, such tax to be levied and collected in like manner with other general taxes of said city and to be known as the 'library fund.'"

We hold that under this statute the excise board was authorized to approve the tax levy for library purposes.

The plaintiff also challenges the levy of .08 mill for cemetery purposes. Section 4329, C. O. S. 1921, makes the following provision:

"All cities or towns owning and controlling any lands, lots or parcels of ground used for cemetery purposes are hereby authorized in addition to all tax levies provided for municipal purposes to levy and assess against all property, both real and personal, within the corporate limits of such cities, towns and villages, a yearly tax not exceeding the sum of one-half mill upon the

dollar of taxable valuation for the purpose of beautifying, caring for, and the upkeep of all such lands and premises so held and owned by such cities, towns and villages for cemetery purposes."

We hold that under this statute the excise board was permitted to approve the levy of .08 mill for said purpose.

Finding no error in the judgment of the district court, the same is affirmed.

NICHOLSON, C. J., BRANSON, V. C. J., and HARRISON, MASON, PHELPS, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 12 C. J. p. 882, § 385; 15 C. J. p. 633, § 347; 28 Cyc. pp. 1658, 1660; 37 Cyc. pp. 724, 763; anno. 37 L. R. A. (N. S.) 1060-1062; 19 R. C. L. p. 978. (2) 15 C. J. p.638, § 349 (Anno).