**TULSA EXPOSITION AND FAIR CORPORATION, an Oklahoma corporation, Plaintiff in Error,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF TULSA, State of Oklahoma, Defendant in Error.**

**No. 43339.**

Supreme Court of Oklahoma.

April 8, 1970.

Rehearing Denied May 12, 1970.

LeRoy Blackstock, J. C. Joyce, Dwayne C. Pollard, Charles S. Chapel, Tulsa, for plaintiff in error.

S. M. Fallis, Atty., by G. W. Newton, Tulsa, for defendant in error.

HODGES, Justice.

This is an appeal from a judgment of the district court of Tulsa County in a declaratory judgment action. Plaintiff below and on appeal is a charitable non-profit organization formed for the purpose of administering the affairs of a fair and exposition in Tulsa County. The trial court found against the plaintiff on all propositions. Plaintiff below occupies the same position upon appeal. The judgment is affirmed.

Plaintiff seeks to establish the validity of a lease agreement which it entered into in 1955 and extended for a fifty year period in 1963, with the defendant, The Board of Commissioners, of Tulsa County. The defendant maintains that the act creating the Fair and Exposition, Title 2, Sections 156 through 156q, is unconstitutional and therefore the lease entered into between the parties pursuant thereto is invalid. Plaintiff asserts that the act is constitutional, and in the event it should be declared unconstitutional they contend the sections of the act are severable. They also contend, alternatively, that the provisions in Title 19 O.S. Section 1, provide additional statutory authority upon which the validity of the lease may stand. A further alternate proposition presents the validity of the lease as an express public trust under the provisions of the Public Trust Act, Title 60 O.S. Sections 176–180.

The asserted unconstitutional aspect of the act is that it violates the constitutional prohibition against special legislation where general legislation may be made applicable as provided in Art. V, Section 59, of the Constitution. The determinative issue then is whether the statute creating the "Tulsa Fair Act" is a general law, or a special and local law.

The main point of attack regarding the act is that the population bracket limits the act to one county with the population requirement having no relation to the subject matter of the legislation. The objectionable section of the act is as follows (2 O.S. § 156):

> "For the purpose of cooperating with the State of Oklahoma in the encouragement and development of agricultural, mineral and industrial resources, and educational facilities of the State, and in the raising of livestock therein, there may be established in all counties of the State of Oklahoma having a population of one hundred thousand (100,000) or more, and less than two hundred thousand (200,000) population, according to the last Federal Decennial Census and succeeding Federal Census, agricultural and industrial expositions and fairs, in the manner hereinafter provided."

It is agreed between the parties that at the time of the passage of the act (1943) Tulsa County was the only county that fell within the limits of the population restriction and at the time the suit was filed in 1968, it was still the only county that qualified. For identification the act will be referred to herein as the "Tulsa Fair Act."

Plaintiff contends the act does not come within the constitutional prohibitions because it is of a general nature and not special in that it draws exhibits and people from all over the state. That it is the largest fair in the state and the seventh largest in the United States. They argue the agricultural, educational, and economic

benefits are not confined to the county but apply to the entire state.

Plaintiff cites cases dealing with The Grand River Dam Authority, the placement of the state capitol, and the courts system as examples of general laws that have a specific application. They assert that inasmuch as these cases are examples of a general law, the reasoning contained therein applies to the instant case. We find the cited cases to be factually distinguishable. In each of the cases there was some relationship between the restriction contained within the statute and the purpose of the Act.

■ The Grand River Dam Authority acts are predicated upon the restriction of the number of counties due to the size and location of the river and the area that is affected by the construction of the dam. The nature of a State Capitol is such that it is necessary for the administration of the state government and could be located in but one place. The number of courts for a given county based on the population of the county has a direct relation to the administration of justice dependent upon the volume of business of the court according to the population.

■ In discussing the question of local as distinguished from general legislation, we said in the case of Haas v. Holloman, Okl., 327 P.2d 655,

"In order for a law to be general in its nature and to have uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. But, where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some dis-tinctive characteristic upon which a different treatment may be reasonably founded and that furnished a practical and real basis for discrimination."

■ In the case of Elias v. City of Tulsa, Okl., 408 P.2d 517, we said in the second syllabus of that case:

"Invalid local or special laws rest on a false or deficient classification. Their vice is that they do not embrace all the class that they should naturally encompass. They create preference and establish inequality. They apply to persons, things and places possessed of certain qualities or situations and exclude from their effect other persons, things, or places which are not dissimilar in this respect."

In Williams v. Johnson, Okl., 396 P.2d 518, we said:

"An attempted classification by the Legislature of counties on the basis of population for legislative purposes which is not founded upon real and substantial distinctions and in which the designated differences in population do not bear some reasonable, rational relation to the subject matter is unconstitutional as being a local or special law and not a general law."

■ Plaintiff argues that because the fair in Tulsa County has grown in the 25 years it has been in existence that it is now of statewide concern and therefore is of a general nature. The test though is to determine whether the statute lies within the purview of a general law at the time of its enactment and not at some subsequent date. This court in the case of State ex rel. Nesbitt v. District Court of Mayes County, Okl., 440 P.2d 700, at p. 706, stated:

"Our inquiry is confined to, and cannot be extended beyond, that of measuring the basis of classification actually embodied in the bill itself (at the time of its enactment) by the permissible standards of our fundamental law."

Whatever the general nature of the statute may be, it must be apparent at the time the statute was enacted into law.

Plaintiff also contends the "Tulsa Fair Act" is not a local or special law, but a general law, because it was the intent of the legislature to create a "State Fair" under Chapter 159, S.L.1925, now 2 O.S.1961, §§ 156–156q. They argue that this court on four separte occasions has held the fair in Tulsa County is a State Fair. As authority they cite the following cases: Simmons v. Stuckey, 113 Okl. 200, 241 P. 124 (1926); C. D. Coggeshall & Co. v. Smiley, 142 Okl. 8, 285 P. 48 (1929); Aaronson v. Smiley, 142 Okl. 29, 285 P. 49 (1929); In re Bliss, 142 Okl. 1, 285 P. 73 (1929). We disagree.

■ The Act which we are considering in the present case was enacted in 1943. If the intention of the legislature is pertinent to the issue as posed by the plaintiff's proposition then we must construe the intention of the legislature that enacted the Tulsa Fair in 1943, and not the intent of the legislature in 1925. The Act creating the Tulsa Fair in 1925 was repealed by the legislature in 1935. The 1935 Tulsa Fair Act was repealed in 1937. The 1937 Act was repealed in 1943. The Tulsa Fair Acts of 1925, 1935 and 1937 are passé. It is the 1943 Act which must be interpreted and construed. All of the above cited cases have reference to the 1925 Act, and for that reason are distinguishable.

Plaintiff argues that the court in these cases construed identical language as in the 1943 Act, and there declared and held the Tulsa Fair to be a State Fair. The obvious answer to plaintiff's argument is that these cases *did not* consider the constitutional aspect of the Tulsa Fair Act of 1925 as being a special or local law in violation of Article V, Section 59 of the Oklahoma Constitution. The issue was not presented or argued to the court, nor was the court's attention directed to this problem.

■ The cited cases merely allowed a county to levy additional taxes in excess of statutory limitations where the levy also subserves a state purpose. None of the cases, however, support the proposition that

if an Act subserves a purpose of the State, then the Act is a State function. The Act must still be adjudged as to whether it is a local or special law. The fact the State of Oklahoma may receive a benefit from the Tulsa Fair, or that it subserves a purpose of the State, does not in and of itself establish a State Fair.

■ It is apparent the legislature intended by the 1943 Act to authorize a *County* Fair in Tulsa County. A contrary intention could have been easily resolved in the Act itself. If the legislature had intended to create a *State* Fair in Tulsa County, it would have been a simple matter for them to designate it as such in the Act. But instead, the legislature specified in the Act a closed population bracket, which is an integral and significant part of the Act. If the legislature had intended a *State* Fair in Tulsa County, then the closed population bracket would have no purpose.

Another important indication that the legislature did not intend to create a State Fair was the provision in the Act which provided that it was mandatory for the Board of County Commissioners to appropriate to the Fair Board the sum of $25,-000.00 each year out of the current expenses of the county. Article X, Section 9 of the Constitution was amended in 1933 and as amended, "No ad valorem tax shall be levied for State purposes, nor shall the proceeds of any ad valorem tax levy upon any kind of property in the State be used for State purposes". The Legislature was aware of this constitutional prohibition and if it had intended to create a State Fair, surely it would not have required the County Commissioners to include in their estimate of needs a sum of $25,000.00.

Contrary to the position of the plaintiff, we find the legislature did not intend to create by the 1943 Act a State Fair in Tulsa County.

■ Since it is admitted that the statute would apply only to Tulsa County we must then find some general characteristic of the law that would take it out of the category of special legislation ff it is to

be upheld. The population bracket must have some relation to the subject matter of the legislation. The subsequent development and growth of the fair to large proportions does not alter the purpose of the statute at the time it was enacted, as we have seen. This law created a fair for Tulsa County only. The subject matter is agricultural fairs and expositions. What relation does the population of this county only have to a fair? As plaintiff has so extensively pointed out fairs and expositions have been held in a variety of places; county seats, small towns, large towns, in rural places and in urban areas. Fairs historically are of a rural nature dealing in matters pertaining to farming and ranching. In recent years the trend has been to also include business and manufacturing displays and exhibits. These matters are of wide interest and generally are not limited to only one county.

It has long been recognized that counties having a larger population may have problems much different from more sparsely populated counties, insofar as many topics of legislation are concerned. Bell v. Crum, 188 Okl. 67, 106 P.2d 518; Lowden v. Oklahoma County Excise Board, 186 Okl. 706, 100 P.2d 448. If size is then important to qualify as a general law, the upper restrictions of population of the county should be removed or a rational basis should attach. But of what purpose can there be in a restricted upper limit on population except to give a special or local advantage to one county over all the other counties. In the instant case the plaintiff is seeking to justify an upper limit on population classification that excludes from its operation not only the State's most populous county, Oklahoma County, but also the seventy-five remaining less populous counties, without establishing a rational basis upon which the restriction of counties by a middle bracket population classification should attach. This is the type of special legislation that the constitutional provision was designed to protect against and is in violation of Art. V, Section 59 of the Constitution.

Plaintiff raises the point that if the section of the statute regarding population is declared unconstitutional then the other sections are severable and may stand. The answer to this question involves a probe of legislative intent. In other words, would the legislature have passed the remaining parts of the Act if they had known the population bracket was void. If the remaining provisions of the Act creates a result not intended or contemplated, then severability cannot be involved, and the whole Act must be declared invalid. Parwal Investment Co. v. State, 71 Okl. 121, 175 P. 514.

It is interesting to note that if the population bracket is severable then the Act is available to every county in the State. Obviously, this is a result not intended or contemplated by the legislature. The Act was designed, tailored and marketed for legislative enactment for the sole purpose of establishing a fair in Tulsa County to the exclusion of all other counties. We find the population classification is an integral part of the Act and for that reason is not severable from the rest and the whole must fall.

As an alternate proposition plaintiff contends the statutory authority for Tulsa County to execute the lease is not restricted to that contained in the "Tulsa Fair Act". Plaintiff states there is additional authority contained in 19 O.S.1961, § 1. This statute provides general powers of counties after declaring a county to be a body corporate and politic.

Counties have only such authority as is granted by statute. Johnston v. Conner, 205 Okl. 233, 236 P.2d 987; Herndon v. Anderson, 165 Okl. 104, 25 P. 2d 326. The Board of County Commissioners in exercising corporate powers is limited to those fields expressly assigned to such subdivisions of the state by the legislature. Ingle v. Board of County Commissioners, Okl., 274 P.2d 1021; Board of County Commissioners v. Warram, Okl., 285 P.2d 1034. Public officers possess only such authority as is conferred upon

them by law and such authority must be exercised in the manner provided by law. Brown v. State Election Board, Okl., 369 P.2d 140; Shaw v. Grumbine, 137 Okl. 95, 278 P. 311; National Surety Co. v. Sand Springs State Bank, 74 Okl. 176, 177 P. 574.

It is within the legislative power to define the duties among the several county officers and to regulate county governmental affairs. Board of Comm'rs of Tulsa County v. News-Dispatch Printing & Audit Co., 104 Okl. 260, 231 P. 250. Boards of County Commissioners derive their powers and authority wholly from the statutes, and acts performed by them must be done pursuant to authority granted by valid legislative action. State ex rel. Tharel v. Board of Commissioners of Creek County, 188 Okl. 184, 107 P.2d 542.

Under the terms of the lease in question, the defendant county commissioners granted and delegated to a private charitable corporation, the management, control, maintenance and operation of an exposition and fair on improved real property belonging to the county with the county contributing $25,000.00 a year to be used in payment of premiums, salaries, and other expenses incurred in the management, operation and conducting such exposition and fair, for a term of fifty years.

While we deem it unnecessary to decide whether 19 O.S.1961 § 1 as a general proposition authorizes counties to lease lands owned by them, in our opinion the statute does not authorize the county commissioners to enter into the lease agreement under consideration. The only statutory authority authorizing such lease agreement is that which we hold by this opinion to be unconstitutional.

Plaintiff in their last proposition contends the lease is an express public trust, and as such, Fair Corporation has specific statutory authority under 60 O.S. § 176, to enter into the lease with the County of Tulsa. The pertinent portion of that statute is as follows:

"The officers or any other governmental agencies or authorities * * *, hereby are authorized and empowered to lease such property for said purposes, after the acceptance of the beneficial interest therein by the beneficiary as hereinafter provided, or conditioned upon such acceptance."

Plaintiff does not refer to this lease as any other type trust than an express public trust. For that reason our discussion will be limited to an express public trust.

We have held that for an express trust to be created there must be an intention to create a trust on the part of the party having the legal and equitable control of the subject matter. Davis v. National Bank of Tulsa, Okl., 353 P.2d 482. In addition to the intent necessary and the legal and equitable control there must also be a trustee designated. McCoy v. McCoy, 30 Okl. 379, 121 P. 176; Bryant v. Mahan, 130 Okl. 67, 264 P. 811. Even though this intent is necessary at the time the trust is executed it may be manifested by subsequent actions of the parties. Davis v. National Bank of Tulsa, supra. The only evidence the trial court had before it was the lease in question. The parties have leased the premises over a period of some 19 years, first in 1949, then in 1955, and an extension entered into in 1963. At all times the parties were designated and occupied the role of lessee and lessor, not trustee and trustor or settlor. Plaintiff attempts at this late date to formulate a theory of the lease instrument being one and the same as an express trust. There is a complete lack of evidence as to the intention of the defendant occupying any other position than that of a lessor. Even conceding that the lease agreement may in some respects qualify as a trust instrument, if there was no intent that it should be an express trust arrangement by the defendant at the time the lease was executed then no trust was created. Davis v. National Bank of Tulsa, supra. Belton v. Buesing, 240 Or. 399, 402 P.2d 98. An examination of the lease agreement as a whole fails to re-

veal any intent upon the part of the defendant to enter into an express public trust.

There has been no statutory or Constitutional authority shown for the execution by the Board of Commissioners of Tulsa County of the lease in question. Accordingly, the judgment of the trial court is affirmed.

All of the Justices concur.