Dear Representatives Glover,
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
1. Is the Governor empowered, by issuance of an executiveorder, to create and/or enforce penalties against a Stateofficer, such as removal from office, for failure to comply withthe requirements of the executive order?;
 2. Is the Governor empowered to require the Director of theOffice of State Finance to withhold the issuance of warrants foran agency when the agency has not complied with the requirementestablished by executive order, if the law does not authorize orrequire the Director of the Office of State Finance to do so?
 I.
¶ 1 The constitutional source of gubernatorial power is Article VI, Section 1; Article VI, Section 2; and Article VI, Section 8. Article VI, Section 1 enumerates the State Executive Officers; Article VI, Section 2 vests "Supreme Executive power" in the Governor; and Article VI, Section 8 requires the Governor to "cause the laws of the State to be faithfully executed."
¶ 2 The authority of the Governor to issue executive orders does not flow directly from the Oklahoma Constitution although it is recognized in several statutes. See, e.g., 74 O.S. 3303
(1981), providing for the creation of agencies by executive order during the interim between sessions of the Legislatures; 75 O.S.256 (1988), providing for the codification of executive orders.
¶ 3 The Oklahoma Supreme Court, in Russell Petroleum Companyv. Walker, 19 P.2d 582 (Okla. 1933), viewed the validity of executive orders in the following terms:
 No greater penalty or different manner of enforcement may be imposed than that provided by the legislative enactments, and a greater penalty or different manner of enforcement imposed by an executive order as ineffective.
Id. at 587 (Emphasis added).
¶ 4 The basis for this conclusion was the Court's determination that the "law-making power of the State is vested exclusively in the legislature." The language used by the Walker court makes it clear "that executive orders designed to accomplish a legislative result are invalid." A.G. Opin. No. 73-107. Seealso, A.G. Opin. Nos. 77-191 and 75-253. Of course, in discharging the "Supreme Executive Power," the Governor may "issue Executive Orders to accomplish efficient administration within the Executive Branch." A.G. Opin. No. 73-107.
¶ 5 With respect to the removal of executive branch officers, executive offices are created either by the constitution or by the legislature. See, Okla. Const. Article VI, Section 1. The legislature, in creating an executive office, may, absent constitutional provisions to the contrary, specify the means by which such officers are to be removed. See, e.g., Wentz v.Thomas, 15 P.2d 65 (Okla. 1932). The Legislature has also created a general removal power in the Governor, 74 O.S. 2
(1981), which provides that "the Governor shall have power to remove any officers appointed by him, in case of incompetency, neglect of duty, or malfeasance in office; and may then fill the same as provided in case of vacancy." The Wentz case, cited above, stands for the proposition that a statute specifying a particular procedure for removal of an officer supersedes the general removal powers of the Governor as specified in 74 O.S.2 (1981). It is not practicable to canvass in this opinion the entire executive branch, and outline the terms of removal for the various executive branch officers. Suffice it to say that many officers serve strictly at the pleasure of the Governor (e.g., Director of Public Affairs, 74 O.S. 61.1 (1988)). Other officers (e.g. the Superintendent of Public Instruction, Okla. Const., Article VI, Section 1) are constitutional officers who are removable only by impeachment (Okla. Const. Article VIII). Yet others, e.g., the Secretary of State, are constitutional officers appointed by the Governor for fixed terms, and are subject, as are other executive branch officers, to the removal process outlined in 51 O.S. 91 (1981) et. seq. Still another category of executive officers will be subject to special removal procedures created by the legislature. For example, the Director of the Department of Transportation serves at the pleasure of the Transportation Commission, not of the Governor. 69 O.S. 305
(1988).
¶ 6 Therefore, your first question may be answered as follows: With respect to the removal of executive branch officers, the Governor has only those powers conferred on him by the constitution and statutes of the State of Oklahoma. He may not add to those powers via an otherwise lawful executive order.
 II.
¶ 7 You have also asked if the Governor is empowered to require the Director of the Office of State Finance to withhold the issuance of warrants for an agency when the agency has not complied with the requirements of an executive order. The answer to this question hinges upon the resolution of two issues: First, the lawfulness of the requirements imposed by the executive order and, second, the scope of statutory powers conferred upon the Director of the Office of State Finance (the Director) by the Legislature.
¶ 8 With respect to the first issue, we note that the Governor may not exercise legislative power by means of an executive order. See Part I above. Of course, the validity of any specific executive order is a question of fact, or a mixed question of fact and law, which is beyond the scope of an Attorney General Opinion. 74 O.S. 18(b) (1988). The discussion in Part I of this opinion illustrates some of the legal norms relevant to that inquiry. Although the Governor may, pursuant to Article VI, 8 of the Oklahoma Constitution, require any executive branch officer to perform faithfully his statutory duties, the Governor may not create duties in an executive branch officer additional to those mandated by the Legislature.
¶ 9 We must be mindful of the principle that public officers like the Director have only such authority as is conferred upon them by law, and such authority must be exercised in the manner provided by law. Tulsa Exposition and Fair Corporation v. Boardof County Commissioners of Tulsa County, 468 P.2d 501, 507
(Okla. 1970). Our review of the Oklahoma statutes discloses no enactment expressly conferring the authority to withhold issuance of warrants under the circumstances about which you inquire. The duties of the Director are contained in the Budget Act of 1947, presently codified at 62 O.S. 41.1 (1981) et seq., as amended.
¶ 10 The most concise statement of the Director's powers is contained in 62 O.S. 41.4 (1981):
 The Director of State Finance shall have the power, and it shall be his duty under the direction of the Governor: (1) to prepare the budget document and assist in the drafting of legislation to make it effective, (2) to make field surveys and studies of governmental agencies, looking toward economy and greater efficiency, (3) to make allotments to control expenditures, (4) to authorize transfers of appropriation authorized by law, (5) to study accounting and other reports rendered by the Central Accounting Office and Departmental Services, and (6) to aid the Governor in the economical management of state affairs. In addition to his other duties the Director of State Finance shall, upon request, advise and consult with members of the Legislature and legislative committees concerning income and expenditures of state agencies.
¶ 11 None of these enumerated, general powers encompasses the authority to withhold warrants. There are circumstances, however, under which the Director may withhold allotments to an agency. For example, the Director may approve or reject agency requests to transfer monies from one accounting fund to another, based upon criteria established by the Legislature. 62 O.S. 41.12(a) (1988). The Director also may withhold allotments which, if made, would cause an agency to exceed its budget. Indeed, he is required to do so. 62 O.S. 41.6 (1988).
¶ 12 Additionally, the Director has the discretionary power to authorize agencies to make purchases not requiring compliance with certain provisions of the Central Purchasing Act. See, 62O.S. 41.16(D) (1988). In fact, none of the statutes comprising the Budget Act of 1947 appears to require or authorize the Director to condition his approval of an allotment request from an agency upon his or her independent evaluation of the legal or policy merits of a particular appropriation. In fact, 41.11, a statute requiring agencies to provide the Office of State Finance with detailed schedules outlining proposed expenditures, commands that "the Budget Director shall not have the authority to curtail the operation of any particular part of the expenditure program of an agency, but shall order a reduction in the total programonly where insufficient revenues are anticipated to carry on theprogram for the period concerned." Emphasis added. The discretion of the Director does come into play when an agency proposes to transfer funds within or between separate agency accounts, a circumstance not involved in your questions. See, 62O.S. 41.12.
¶ 13 Our inquiry does not end there because an officer also has such implied powers as are necessary for the efficient exercise of express powers. Marley v. Cannon, 618 P.2d 401, 405 (Okla. 1980); City of Wilburton v. King, 18 P.2d 1075, 1077 (Okla. 1933). The question then becomes the scope of any implied powers held by the Director. In this connection, it should be noted that the Oklahoma Supreme Court has taken a rather narrow view of the reach of implied powers:
 In Board of Examiners in Veterinary Medicine v. Tubbs, Okl., 307 P.2d 830 (1957), we held that the Board could maintain an action in its own name to enjoin the unlicensed practice of veterinary medicine even though the act regulating such practice did not expressly authorize such procedure. After recognizing the rule announced in Fortinberry, supra, and after examining the applicable regulatory act, the court found that to deny the Board the power to seek injunctions against unlicensed practice" would not only be inconsistent with but directly contrary to what appears to be the principal purpose, or object, of the Act. It would also render passage of the Act an ineffective means of accomplishing said purpose; and from a practical standpoint, would largely emasculate the other enforcement powers specifically given the Board."
618 P.2d at 405.
¶ 14 The Attorney General also has taken a very narrow view of such powers, holding, for example, that the Director does not possess legal authority to promulgate written rules, regulations or procedures which would permit state agencies to procure goods or services at a cost not exceeding $750.00 by utilizing authorization orders provided by the Director in lieu of statutory procurement procedures. A.G. Opin. No. 82-158. Nor does the Director have the authority to disapprove or disallow salary increases voted for Oklahoma Police Pension Board employees. A.G. Opin. No. 88-075.
¶ 15 The Tubbs rule would require us to conclude that some express power of the Director would be negated unless the power to withhold warrants were inferred from one of his general powers. No such inference arises from the Budget Act of 1947.
¶ 16 In addition to the statutory authority discussed above, it should be noted that public officers are also governed by the state and federal constitutions and the current construction placed thereon by the Supreme Court. See, State ex rel. Grimesv. Board of Education of Oklahoma City, 99 P.2d 876 (Okla. 1940). Therefore, there is a sense in which all public officers are constrained to avoid unlawful conduct, including the approval of unlawful budget allotments.
¶ 17 For those public officers who, like the Director when considered in the context of your question, do not have the authority to determine which proposed actions are unlawful, resort to adjudicative and quasi-adjudicative fora is available to resolve those questions. Therefore, with respect to your second question, it appears that because the Director does not have the independent legislative authority to withhold the issuance of warrants for an agency, except under specifically limited circumstances, the Governor may not create that power in the Director via an executive order.
¶ 18 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. The Governor is not empowered, by issuance of an executiveorder, to create and/or enforce penalties, such as removal fromoffice, for failure of an executive officer to comply with anexecutive order.
 2. The Governor is not empowered to require the Director ofthe Office of State Finance to withhold the issuance of warrantsfor a State agency when the agency has not complied with therequirements established by an executive order, when thelegislature has not authorized or required the Director of theOffice of State Finance to do so pursuant to 62 O.S. 41.1(1981) et seq., as amended.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
NED BASTOW ASSISTANT ATTORNEY GENERAL CHIEF, GENERAL COUNSEL DIVISION