Dear Senator Burrage:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. May a county lawfully enter into an agreement with a municipality with a population in excess of 15,000 requiring the expenditure of county funds to assist in the building and/or repair and/or maintenance of a public road project, part of which is located within the city limits of the municipality and part of which is located outside city limits but within the county?
 2. May a county lawfully enter into an agreement with a municipality with a population in excess of 15,000 and/or the State Department of Transportation, and/or a railroad, requiring the expenditure of county funds to assist in the planning, design and construction of an elevated train track, part of which is located within the city limits of the municipality and part of which is located outside city limits but within the county, in order to alleviate traffic congestion for the citizens of the municipality and county?
Answering your questions will require examining an array of statutes dealing with roads and road projects. "Different statutes on the same subject are generally to be viewed as in pari materia and must be construed as a harmonious whole." Taylor v. State Farm Fire Cas. Co.,981 P.2d 1253, 1261 (Okla. 1999) (footnote omitted). "All legislative enactments in pari materia are to be interpreted together as forming a single body of law that will fit into a coherent symmetry of legislation." Id. (footnote omitted). Although laws governing roads and road projects appear in several titles of the Oklahoma Statutes, those in Title 11 (Cities and Towns), Title 19 (Counties and County Officers), and Title 69 (Roads, Bridges, and Ferries) are most relevant to your questions.
First, we note that the Oklahoma Statutes provide general authority for counties and municipalities to enter into agreements with each other for their mutual benefit. For example, the Interlocal Cooperation Act, 74 O.S. 2001, §§ 1001[74-1001] — 1008 ("Interlocal Act"), "permit[s] local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage." Id. § 1001. Under the Interlocal Act, entities defined as "public agencies" may agree to jointly engage in projects to serve their constituents. Id. § 1003(A)(1). Political subdivisions of the state, such as municipalities and counties, are considered public agencies.Id. *Page 2 
Public agencies may accomplish their joint purposes by either an interlocal agreement (id. § 1004(A), (B)) or a contract for governmental services (id. § 1008(A)). Section 1004 of the Interlocal Act provides in pertinent part:
 A. Any power or powers, privileges or authority exercised or capable of exercise by a public agency of this state may be exercised and enjoyed jointly with any other public agency of this state. . . .
 B. Any two or more public agencies may enter into agreements with one another for joint or cooperative action pursuant to the provisions of this act.
 Appropriate action by ordinance, resolution or otherwise pursuant to law of the governing bodies of the participating public agencies shall be necessary before any such agreement may enter into force.
Id. Section 1004 goes on to list the required elements of such agreements and authorizes the cooperating public agencies to create a separate entity to act on their behalf in the execution of the joint project. Id.
§ 1004(C)(2). Such agreements must be approved by either the Attorney General or, for certain road and bridge projects, the district attorney.Id. § 1004(F); 69 O.S. 2001, § 601[69-601](A). Finally, financing of joint projects under Section 1004 "shall be as provided by law." Id.
§ 1004(G).
Alternatively, public agencies may choose to contract with each other under the authority granted in Section 1008 of the Interlocal Act, which reads in pertinent part as follows:
 A. Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking which any of the public agencies entering into the contract is authorized by law to perform, provided that such contract shall be authorized by the governing body of each party to the contract. Such contract shall set forth fully the purposes, powers, rights, objectives and responsibilities of the contracting parties.
Id.
The Interlocal Act does not limit the types of projects that public agencies may jointly undertake, and would ostensibly permit counties and municipalities to jointly construct and maintain public roads and bridges. We must also, however, examine whether other, more specific statutes limit this authority.
We therefore turn to statutes specifically governing roads and bridges, counties, and municipalities. First, the Oklahoma Highway Code of 1968 ("Highway Code") governs the state's roads, bridges, and ferries. See 69 O.S. 2001 Supp. 2007, §§ 101 — 1964. The Highway Code contains a statute *Page 3 
that expressly allows counties and municipalities to jointly agree to build and maintain each other's roads as follows:
 A. The Department of Transportation may by agreement with the governing board of a city, incorporated town or other municipality having a population less than five thousand (5,000), construct, improve, repair or maintain any of the streets of such city, town or municipality.
 B. A county and a municipality or any two or more counties or municipalities may contract with each other to construct, improve, repair or maintain any of the roads, streets or highways of the other parties to the contract. No party to the contract shall be liable for the acts or omissions of the other parties or for failure to inspect or supervise the performance of the other parties.
69 O.S. 2001, § 1903[69-1903] (emphasis added).
Our analysis cannot end here, however, because more specific statutes exist regarding road and street construction and maintenance in the Oklahoma Municipal Code and the statutes governing counties. The rules of statutory construction dictate that a more "specific statute will control and act as an exception to a statute of general applicability." SeeDuncan v. City of Nichols Hills, 913 P.2d 1303, 1310 (Okla. 1996). These more specific statutes further limit what a county and municipality may agree to despite the broad general language of Section 1903 of the Highway Code cited above.
Although some overlap exists, the State, counties and municipalities are each individually responsible for the roads within their respective jurisdictions. Oklahoma's highway system is divided into two classes — state highways and county highways. 69 O.S. 2001, § 501[69-501](A). The county highway system is made up of all public roads within any county (except for roads designated as part of a state highway). "It shall be the duty of the board of county commissioners in each county to construct and maintain as county highways those roads which best serve the most people of the county." 69 O.S. 2001, § 601[69-601](A). The county commissioners have "exclusive jurisdiction over the designation, construction and maintenance and repair of all of the county highways and bridges therein." Id. Interlocal cooperation agreements made pursuant to Section 601 must be approved by the district attorney. Id.
For their part, municipalities have a non-delegable duty to maintain the streets within their city limits in a reasonably safe condition for travel by the public. Bannister v. Farmers Alliance Mut. Ins. Co.,630 P.2d 1279, 1281 (Okla. 1981). Title to the roads and streets within municipal limits is held by the municipality "in trust for public use and enjoyment" and municipalities have authority to regulate and control the use of their roads as well as to construct and improve them. 11 O.S. 2001, § 36-101[11-36-101](1), (4). The Municipal Code provides that municipalities may fund improvements for their streets out of tax proceeds, general revenues, assessments on property owners and/or by issuing *Page 4 
bonds. Id. §§ 36-112(A), 36-109, 36-301. In addition, the Municipal Code allows counties to help municipalities fund their street improvements in certain cases.
For example, 11 O.S. 2001, § 36-112[11-36-112](C) of the Municipal Code states as follows:
 Any board of county commissioners, in its discretion, may enter into agreements with the governing body of any municipality for participation with County Highway Funds[1] in the cost of any improvements on streets which are in the limits of the municipality and are part of the County Highway System.[2] Such agreements may provide for the award and supervision of the contract by the municipality. The county's share of the cost is to be due and payable upon completion of the project.
Id. (emphasis added) (footnotes added). This statute limits the use of county funds for municipal street improvements to only those streets within municipal limits that are also part of the County Highway System. Similarly, a provision of the Highway Code states, "The board of county commissioners of any county may, under the direction of the [Transportation] Commission, contract for grading, draining or hardsurfacing any street within any municipality where such street is acontinuation of or a connecting link in the State or county HighwaySystem." 69 O.S. 2001, § 603[69-603] (emphasis added). Whether any particular contemplated street improvements within municipal *Page 5 
limits could be funded by a county under these statutes is a question of fact that cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
The next section of the Municipal Code, Section 36-113, provides another method by which municipalities are eligible to use non-municipal funds (state, county or tribal) for their street improvements. This statute does not require that the municipal roads to be improved be part of the county highway system, but instead authorizes county involvement in municipal street improvement projects based on the population of the municipality and the availability of earmarked county sales tax funds. Section 36-113 reads as follows:
 A. The Department of Transportation may, or the board of county commissioners of any county or federally recognized tribal government shall, by agreement with the governing body of a municipality having a population less than five thousand (5,000), construct, improve, repair or maintain any of the streets of the municipality.
 B. Subject to the provisions of Section 339 of Title 19 of the Oklahoma Statutes, the board of county commissioners may construct, improve, repair, or maintain any of the streets of a municipality having a population of less than five thousand (5,000).
 C. Subject to the provisions of Section 339 of Title 19 of the Oklahoma Statutes, the board of county commissioners may construct, improve, repair or maintain any of the streets of a municipality having a population of less than fifteen thousand (15,000) if the county has passed a sales tax with the proceeds earmarked to construct, improve, repair or maintain any of the streets or roadways of such county.
Id. § 36-113 (emphasis added). As stated in the preceding language, any road work performed pursuant to subsection (B) or (C) of Section 36-113 must also comply with 19 O.S.Supp. 2007, § 339[19-339](A)(16), which reads in pertinent part as follows:
 A. The county commissioners shall have power:
 . . . .
 16. To utilize county-owned equipment, labor and supplies at their disposal on property owned by the county, public schools, two-year colleges or technical branches of colleges that are members of The Oklahoma State System of Higher Education, state and municipalities with a population less than five thousand (5,000) or with a population less than fifteen thousand (15,000) if the municipality or county has passed a sales tax with the proceeds *Page 6 earmarked for construction, maintenance, improvement or repair of any of the streets or roadways in the county. Cooperative agreements may be general in terms of routine maintenance or specific in terms of construction and agreed to and renewed on an annual basis. Work performed pursuant to Section 36-113 of Title 11 of the Oklahoma Statutes shall comply with the provisions of this section[.]
Id. (emphasis added). Neither of these provisions applies to municipalities with populations greater than 15,000, as posited in your questions, nor have we found any other statute that expressly authorizes counties to spend county funds on constructing or maintaining roads within municipal limits for cities with populations greater than 15,000, regardless of the source of funding.
Generally, the authority of a county is limited to those powers expressly granted by statute or such as are necessarily implied from express powers. Tulsa Exposition Fair Corp. v. Bd. of County Comm'rs,468 P.2d 501, 507 (Okla. 1970). Furthermore, a board of county commissioners derives its power and authority solely from the statutes.Id. Although certain statutes grant to counties and municipalities broad authority to agree to jointly participate in some projects, that authority is limited by other, more specific statutes regarding projects for road and street improvements. Specifically, counties may assist municipalities with road improvements within municipal limits in one of three ways: (1) with county highway funds, as long as the municipal roads in question are also part of the county highway system or a continuation or a connecting link of that system; (2) with county sales tax revenue earmarked for that purpose, but only if the municipality's population does not exceed 15,000; or (3) if the municipality has a population of less than 5,000, regardless of the source of funding. 11 O.S. 2001 
Supp. 2007, §§ 36-112, 36-113; 69 O.S. 2001, § 603[69-603]; 19 O.S.Supp. 2007, § 339[19-339](A)(16).
As to your second question regarding whether a county and a municipality may agree to use county funds to plan, design and build an elevated railway within municipal limits, we have found no statutes expressly addressing this subject. We understand, however, that the proposed elevated railway would replace existing grade-level rail crossings on municipal streets to relieve traffic congestion at certain intersections and could therefore be considered street improvements. To the extent an elevated railway could be considered a street or street improvement as described in 11 O.S. 2001, § 36-112[11-36-112](C) or 11 O.S.Supp. 2007, § 36-113[11-36-113](C), the same reasoning would apply as in the answer to your first question. For a county to lawfully expend county funds on railway crossings within a municipality whose population exceeds 15,000, the municipal streets containing the railway crossings must be part of the county highway system or a continuation or a connecting link of that system. Id.; see also 69 O.S. 2001, § 603[69-603].
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. A county may not lawfully enter into an agreement with a municipality with a population in excess of 15,000 requiring the expenditure of county funds to assist in the building and/or repair and/or maintenance of a *Page 7 public road project for any part of the project that is located within the city limits of the municipality, unless the roads are also part of the county highway system or a continuation or a connecting link of that system. 11 O.S. 2001 Supp. 2007, §§ 36-112, 36-113; 69 O.S. 2001, § 603[69-603]; 19 O.S.Supp. 2007, § 339[19-339](A)(16). Whether any particular contemplated street improvements within municipal limits are part of the county highway system and eligible for county funding is a question of fact that cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 2. A county may not lawfully enter into an agreement with a municipality with a population in excess of 15,000 and/or the State Department of Transportation, and/or a railroad, requiring the expenditure of county funds to assist in the planning, design and construction of an elevated train track for any part of the project that is located within the city limits of the municipality, unless the roads that contain the railway crossings are also part of the county highway system, or a continuation or a connecting link of that system. 11 O.S. 2001 Supp. 2007, §§ 36-112, 36-113; 69 O.S. 2001, § 603[69-603]; 19 O.S.Supp. 2007, § 339[ 19-339](A)(16).
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 DEBRA SCHWARTZ ASSISTANT ATTORNEY GENERAL
[1]
 All monies raised for use on the county highways in each county, or apportioned to each county for road purposes, from any source, including all funds and monies derived by law, levy, taxation, or apportionment shall, unless otherwise provided by law, be placed in the county treasury in a fund to be known as the county highway fund.
69 O.S. 2001, § 1503[69-1503](a). Each county highway fund receives much of its revenue from the Gasoline Tax (68 O.S.Supp. 2007, § 500.6[68-500.6]) and the Gross Production Tax (id. § 1004).
[2] As was noted earlier, "The county highway system shall be composed of all public roads within any county, less any part of any road or roads which may be designated as a state highway. . . ." 69 O.S. 2001, § 601[69-601](A). The Highway Code defines "county highway system" as "[t]he system of highways the responsibility for which is lodged with the counties." Id. § 213. *Page 1